## UNION TRUST CO. v. WHITE MOTOR CO.

District Court, N. D. Ohio, E. D. February 7, 1927.

No. 657.

Patents ⊜⇒328—Number 1,342,687, claims 7, 13, 15, 18, 19, for double reduction drive mechanism for automobiles, held invalid for anticipation, and not infringed.

Melanowski patent, No. 1,342,687, claims 7, 13, 15, 18, and 19, for double reduction drive mechanism for automobiles involving application of a planetary system of gears consisting of a central pinion and outer gear with two intermediate gears to the exterior of the rear or driving axle, *held* invalid for anticipation, and not infringed.

In Equity. Patent infringement suit by the Union Trust Company against the White Motor Company. Bill dismissed.

Affirmed in 22 F.(2d) 821.

Ray S. Gehr, of Cleveland, Ohio, and Edward Rector, for plaintiff.

F. O. Richey and B. D. Watts, both of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. The bill charges infringement of United States letters patent No. 1,342,687. Claims 7, 13, 15, 18, and 19 only are in issue. The invention was made and applied for by Leo Melanowski. The patent was issued June 8, 1920, to him as assignor of the Citizens' Savings & Trust Company, to the title of which, by consolidation, the plaintiff has succeeded. The defenses are, as usual, invalidity and noninfringement.

The invention is described in the specifications as certain new and useful improvements relating to power-transmitting mechanism, particularly for motor or auto vehicles. It is said to be specially designed for use in heavy duty trucks, viz. trucks having a capacity of three to five tons and upward. Briefly stated, the invention consists in applying a planetary system of gears, consisting of a central pinion and outer gear with two intermediate gears, to the exterior end of the rear or driving axle. It is called a system of double reduction. Melanowski's invention does not appear ever to have been embodied in a completed construction or to have been used. Defendant's construction has been extensively used by it in heavy trucks. The illustration, page 46, defendant's instruction book, plaintiff's Exhibit 8, was stipulated to be an accurate description and disclosure. It embodies, with some changes of detail, the construction described in patents 1,305,531 and 1,305,453, issued to Frank H. Farmer, June 3, 1919. The two

constructions, with their differences and resemblances, are best shown by Exhibit 8, Figs. 1 and 2, of the Farmer patents, and Figs. 3 and 7 of the Melanowski patent.

At the hearing, two French patents were relied on as a complete anticipation of Melanowski, viz. 474,824, demanded January 29, 1913, and delivered January 4, 1915, to Delahaye & Co., and 479,722, demanded September 13, 1915, and delivered February 5, 1916, to Louis Renault. It is agreed by counsel that the delivery date is the invention date as to these patents, within the meaning of the United States patent law. Plaintiff's counsel concede that Renault, if not a full anticipation of Melanowski, does in fact so far disclose all the features and claims of his patent that the charge of infringement cannot be sustained. To meet this situation, plaintiff has offered evidence which it is said carries Melanowski's invention date back of Renault. Defendant's counsel, while denying this effect to the evidence offered, contend also that the same result follows from Delahaye alone, which is admittedly entitled to priority.

This question of priority as between Renault and Melanowski will be first considered. The bill was filed August 27, 1921. The answer was filed November 10, 1921. Neither Delahaye nor Renault was set up in the answer. Demand was made by defendant upon plaintiff to disclose the earliest invention date claimed for Melanowski. Plaintiff likewise made a similar demand on defendant to disclose the earliest date on which it would rely as to all of the prior patents, printed publications, or uses set up by defendant as anticipations. An order was made that each party disclose this information under seal, which was done, and opened and published April 3, 1922. It was in this manner that defendant first specified November 1, 1915, as the earliest approximate invention date for Melanowski. It was not until late in 1922 that Delahaye and Renault were brought to the attention of plaintiff's counsel, and it was not until January 15, 1923, that amendment was made to the answer setting them up as anticipations. It was not until this situation developed that any necessity or interest was created inducing Melanowski to seek to carry back his invention date beyond his application date.

Certain principles of law are well established for weighing evidence brought forward to establish an invention date earlier than the application date. These principles were fully stated and dealt with by me in Universal Rim Co. v. Firestone Steel Products Co. (D.

22 F.(2d)—52

C.) 289 F. 884. One seeking to carry back an invention date must produce clear and convincing proof, such as will leave no reasonable doubt of its truth. The learned judges who in the past have tried and decided priority disputes possessed a sound understanding of human psychology and displayed profound wisdom in establishing these principles. My experience in patent cases has increasingly impressed me with the wisdom of these rules, and I am not disposed to minimize or ignore them in weighing evidence and deciding controversies touching the priority of invention.

Melanowski's application was filed August 16, 1916. It is clearly proved that he presented drawing (Plaintiff's Exhibit 2) and made disclosure of his invention to his patent counsel June 27, 1916. The patent drawings were made and the specification prepared from Exhibit 2, supplemented by oral explanation and disclosure. Undoubtedly Melanowski had conceived his invention and had developed its details, such as are thus disclosed, at some earlier date. In an affidavit prepared and reduced to writing by his patent counsel February 14, 1921, he says: "About the middle of April, 1916, I laid out and made full-size drawings of a truck rear axle for heavy duty, and after working several weeks I finally made a layout which I thought would be very advantageous to introduce for the market." Exhibit 2 is identified and indorsed in connection with this affidavit as that final layout.

The affidavit further says that he called on Windsor White, defendant's president, the first week in May, 1916; that he took this drawing with him, and explained that he had come to see White about a very important matter, which it would be to the interest of his company to consider. He did not show his drawings or disclose his invention, for the reason that he regarded it as imprudent so to do in advance of filing a patent application, without first reaching an agreement for compensation. No results followed, because, as he says, White was unwilling to "buy a cat in a bag." Shortly thereafter he took the matter up with one E. E. Allyne, a personal friend, whom he had known for over 20 years, and succeeded in interesting him and Rollin H. White, and Mr. Allyne, perhaps a week or two later, took him to the patent counsel, who prepared the application and solicited the patent.

Windsor White concedes the substantial accuracy of these statements, so far as they pertain to the interview and his attitude, except he testifies that he did not see the large

drawing, Exhibit 2, even rolled up in Melanowski's possession. He is unable to fix definitely the date, but would place it later in the year 1916. The evidence is clear and convincing beyond a reasonable doubt that Melanowski conceived his invention as early as the middle of April, 1916, and used diligence thereafter in constructively reducing it to practice, and in having prepared and filed an application.

When one comes to consider and weigh the evidence relied on to show an invention date earlier than Renault (February 5, 1916), one is confronted with many inconsistencies and improbabilities, not to say inaccuracies. The blueprint (Plaintiff's Exhibit 11) introduced for this purpose is shown by the greater weight of the evidence not to have been prepared earlier than late in 1916. It shows certain alterations, if not improvements, in Melanowski's patent drawings, so as to permit easier access to the planetary gear system. Plaintiff's Exhibits 19 and 20 are evidently preliminary drafts, from which Exhibit 11 was developed. Exhibit 19 has written thereon in ordinary lead pencil: "Cleveland, October 18, 1915. L. Melanowski." Attention was called to the brighter and more distinct appearance of the numerals "15" as a suspicious circumstance. The testimony of defendant's expert, Mr. Brown, clearly and conclusively shows many dissimilarities between Exhibits 19 and 20 and Melanowski's patent drawings, and many similarities with Exhibit 11. If, as I am convinced, Exhibit 11 was not prepared until late in 1916, I am fully persuaded, upon the basis of the similarities between it and 19 and 20, that the latter were preliminary sketches relating to the former, and that the date "1915" is erroneous, if not fraudulent. The effort to identify and connect these several drawings with the latter part of the year 1915 must fail.

Plaintiff has also produced a sketch book, in form a stenographer's ordinary note book, known in the record as Exhibit 18. Exhibit 18, as well as 19 and 20, was first produced and seen by plaintiff's attorneys December 31, 1922, while seeking to procure evidence to carry Melanowski's invention date back of Renault. It was found, as testified by Alexander, at Melanowski's residence, in a room used as a drafting room. In addition to Melanowski's testimony supporting the genuineness of dates disclosed thereby, plaintiff has called as witnesses Henry F. Wilms and Joseph H. Dearborn. These witnesses have no interest in the result of this suit. No reason exists to impugn their integrity and good faith. A pencil sketch appears in this note book at page 30, which, if genuine, is sufficiently like Melanowski's final development to constitute an inventive conception as of the date it was produced. It is associated in the testimony with another pencil sketch at page 28, which, however, would not seem to be adequate for such purpose.

The purport of this testimony will be first considered in its aspect most favorable to Melanowski. On July 1, 1915, his pre-existing employment with defendant was terminated with pay for the months of July and August. He opened an office as a consulting engineer in August, 1915, at Room 760, Hippodrome Building. He occupied this office room until the end of March, 1916, and thereafter Room 633 until the end of July following. He had obtained a contract to design and develop a new type of gas car for the Anderson Electric Motor Company, of Detroit. Some time in August, 1915, Dearborn was employed as his chief, and Wilms as a subordinate draftsman. Dearborn entered on this employment probably in August, and Wilms probably not later than September 1. The former continued with him in the same employment until the Anderson car was fully designed and developed, and an experimental car was made and tried out. This covered the entire period of Melanowski's occupancy of Room 760 and part, at least, of the period of his occupancy of Room 633. The exact date when Dearborn ceased working cannot be definitely found, but it was substantially later than Renault's delivery date. Wilms ended his employment early in January, 1916. So far the facts may be regarded as sufficiently proved.

Melanowski says this sketch book, Exhibit 18, is one of a number used by him, but the only one containing any sketches pertaining to his present invention. Both Wilms and Dearborn say they recognize Exhibit 18 as a sketch book used by him, and identify various sketches on preceding pages as pertaining to the development of the Anderson car. Both also give testimony which it is said shows that sketches on pages 28 and 30 were seen by them during the course of their employment and while Wilms was still employed. Dearborn in particular asserts that the sketches, as well as their purpose, were discussed by him with Melanowski. Wilms' testimony is said to be to the same effect, although less positive and definite. Their testimony as to dates is wholly valueless, except as it may be related to the duration of their respective employments.

A factor of probable error is here intro-

duced by the admission, as well as the reasonable probability that either or both of them visited Melanowski's office from time to time after their employment had ended. Other reasons exist suggesting grave doubt as to whether they may not be mistaken as to having ever seen the sketches. Neither had any substantial interest in this matter. They made no drawings and performed no duty in connection with the truck axle development. The events transpired late in 1915 and in 1916. These matters were not again brought to the attention of either of them until about a week before the trial. They were then shown, for the first time after a lapse of eight years, the various sketches, drawings, and papers. The psychological effect of suggestion and the well-known infirmities of human memory have all to be considered.

Other circumstances exist tending to lessen the weight to be given to their testimony, as well as to discredit the genuineness of these sketches. The sketch (page 28) is dated May 14, 1915. The sketch (page 30) is dated July 2, 1915, two days after leaving defendant's employ. If Wilms' and Dearborn's testimony is to have any weight, these sketches were made late during their term of employment, and could not have been in existence at the dates written thereon. Moreover, these sketches are the last of a series of many in the same book. Substantially all the preceding sketches pertain to the development of the Anderson car. Melanowski did not have his contract with Anderson earlier than August, 1915, and did not complete that car earlier than the spring of 1916.

It is probable, and the testimony shows, that every one's energies were concentrated in pushing that project as rapidly as possible to a successful conclusion. It is highly improbable that these sketches, if made at the dates claimed, would be the last in the sketch book. Their position in the book, following the Anderson car sketches, accords with the probability that Melanowski, as well as all concerned, was during the latter part of 1915 diligently engaged in that work, and would not be giving his serious attention to another invention. The erroneous, not to say fraudulent, dates affixed in Melanowski's handwriting to these and other drawings, is a strongly suspicious circumstance. For example, the sketch, page 3, is dated August 17, 1919; the sketch, page 4, is dated March 27, 1915; the sketch, page 8, is dated May 3, 1915. It is difficult to accept as genuine, on an issue so delicate as priority, sketches so patently misdated.

Another item of evidence remains to be considered. It is a letter dated "Cleveland, August 29, 1915," addressed to Robert Mis, at Paris, France, and signed "Leo Melanowski." It appears to be in his handwriting. The deposition of Mis has been taken. It is not asserted that this letter discloses adequately Melanowski's invention, but that it discloses that he was then working on a double reduction system for heavy loads, thereby tending to corroborate his testimony and the claim that his inventive conception was made in October, and not later than November 1, 1915, as disclosed in Exhibit 2 and his patent drawings.

As an inventive conception, it is merely the idea of placing a planetary gear system at the outer end of each rear axle, and, as Melanowski then conceived, attached to the axle housing, which is not the invention in suit nor the infringement. In this respect, granting the genuineness of the letter date, Melanowski had not yet advanced to the position already occupied and anticipated by Delahaye and Lindsay, No. 612,360, October 11, 1898, and Walker, No. 860,410, September 17, 1907.

Some comments may, however, be made. Robert Mis is Melanowski's nephew. He was in August, 1915, a young man not more than 22 years of age. He was not an engineer, and had no technical training. What his occupation then was it not stated, but at the time of trial he was engaged in selling, installing, and repairing electrical appliances. No other letter appears to have passed between them prior to August, 1915, nor thereafter earlier than 1921. The envelope of the letter is not produced. Mis, although asserting the letter arrived in due course, admits that he did not comply with the request contained therein, nor sent any reply. Melanowski likewise admits that no reply or acknowledgment was ever received.

Melanowski's explanation as to why he wrote the letter is plausible, and perhaps probable. He wished to know, as the letter states, if the firm Bletry, who had taken out patents for him in previous years, was still in existence and doing business. Even so, the more probable line of conduct would have been to write directly to the firm Bletry; if not in the first instance, then certainly later, when no reply was received from Mis. It is difficult to understand why he should go into details concerning his inventive conception with an immature young man, who was not an engineer, had no technical education, and was not capable of fully understanding or

appreciating his disclosure, or interpreting it to his patent counsel.

Melanowski further says that he had bought some specimen axles for a Clement firm of automobile makers near Paris, at their request, during a period beginning not earlier than the middle of June, 1915, and the letter states, "We (Melanowski and Clement) had found them unsatisfactory;" hence Melanowski's effort to design a new double reduction gear for heavy loads. The Clement correspondence exhibited does not support the letter. Melanowski therein praises the axles in existence quite extravagently, and Clement is not shown to have expressed any opinion on the subject. It is probable that Melanowski acquired new information about truck axles while making these purchases, but defendant also was making trucks with a double reduction gear system while he was employed by it. It is more probable that Melanowski's thoughts in August, 1915, were devoted to the Anderson car.

This review of the testimony is not made to cast discredit on Dearborn and Wilms, nor to impute forgery to Melanowski and Mis. It is reviewed for the purpose of pointing out the inherent weaknesses of human testimony, and to explain why a trier of facts finds difficulty in this case in reaching a clear and satisfactory conviction of a 1915 invention date for Melanowski. The Mis letter may be eliminated, because not an adequate disclosure. This being done, the case comes merely to this: Can one say that the hypothesis that Wilms and Dearborn are mistaken, after a lapse of 8 years, in saying that sketch 30, Exhibit 18, was seen prior to February 5, 1916, is overcome by clear and convincing evidence? I cannot give an affirmative answer. On the contrary, I think the greater probability is that they are mistaken, and that, as so often happens, their recollections are not only at fault, but are playing tricks, such as so often found in conflicting testimony.

Melanowski's testimony was not impressive or convincing. His memory did not seem to be good. His interest in the result is intense. He and his associates, for whom plaintiff is trustee, have ever since June, 1916, been playing for high stakes. In February, 1921, before learning of Delahaye and Renault, Melanowski believed his invention had been made in April, 1916, and so stated under oath. He was then, and for several years prior thereto had been, acting under the advice of counsel learned in the law and fully appreciating the value of preserving evidence of an early invention date. At this late date, and under the stress of necessity, testimony tending to carry that invention date further back must be regarded as lacking in clear and convincing weight.

It results from these considerations that, quite aside from all questions of diligence in following up and reducing a 1915 inventive conception to practice, Melanowski's invention date cannot be carried back of Renault. So to do would be to disregard all the lessons of experience and all the warnings of several generations of judges.

Upon counsel's concession that Renault so far discloses Melanowski's invention that the latter is not infringed by defendant's structure, it results that plaintiff's bill must be dismissed. This opinion might well end here. Eliminating, however, Renault, I am still of opinion that the same conclusion should be reached upon the remaining prior art, particularly French patent to Delahaye; United States letters patent to Walker, 866,410, September 17, 1907, and 1,127,123, February 2, 1915; Lindsay, 612,360, October 11, 1898; Kaiser, 1,166,764; and Kelso, 1,181,079.

This art need not be reviewed in detail. Delahaye broadly discloses an arrangement of a train of planetary gears at the outer end of the axle and externally of the center of the wheel, thereby effecting transmission through the center of the wheel by means of a shaft rotating at a greater speed and permitting smaller transmission shafts, housing, and axle parts. Delahaye also discloses and provides a balanced drive with dust and oil proof cover for the gears, so that they may roll in oil. The principle of operation and the results accomplished are the same as Melanowski. Wherein he differs from Melanowski consists in the method of fastening the gears to the nonrotatable axle or housing of the live axle, and also in not having a separate gear-inclosing cage. The testimony leaves no doubt in my mind of the practicability of the Delahaye structure. What was left thereafter to be done by any inventor was only a specific organization of parts and improvement of details.

Melanowski has organized and developed these details and improvements into one specific form. The disadvantages of his form consist, first, in placing his double reduction driving mechanism outside of or offset from the vertical center of the wheel, a disadvantage likewise present in Delahaye; and, second, his insecure bolt method of fastening the gear casing to the axle housing, and so inclosing the gear system and live axle as to prevent access to or removal of these parts without disassembling the wheel. Some of the last group of defects he sought to remedy

in the manner disclosed in drawing Exhibit 11.

Defendant's structure differs from Melanowski as much as the latter differs from Delahaye. It resembles Renault, and is descended more legitimately from Walker and Lindsay. It places the double reduction gear system where it ought to be, viz. at the point of power application, which is through the vertical axis of the rear driving wheels. Its means of fastening the central pinion to the live axle, and the outer and intermediate gears to the nonrotatable axle, are distinctly different. It uses only one intermediate or idler gear, stressed by Melanowski as essential to his balanced drive. The disadvantages of disassembly and easy access present in Melanowski are also obviated in a substantially changed manner. If Melanowski's claims in issue are valid over Delahaye and the other prior art, they must none the less be limited to Melanowski's specific construction, and cannot be given a range of equivalents broad enough to include defendant's structure. If Melanowski is entitled to have and keep his specific structure, the defendant likewise is entitled to make and sell its specific construction.

Nor can it be justly said that defendant has bodily appropriated Melanowski, rather than have developed its structure from the prior art. The three letters of Mr. Thurston, defendant's patent counsel, introduced in evidence, and the other evidence said to show wrongful appropriation of Melanowski, have been duly considered. The first letter shows defendant engaged in developing a double reduction drive at a date earlier than Melanowski's first interview with Windsor White, and considering in connection therewith other prior patents. Nothing appears in this evidence which modifies my conclusion, nor deprives defendant of its right to develop and use its structure. It was free so to do, provided only it did not appropriate Melanowski's specific form. In my opinion, this has not been done.

Plaintiff's bill will be dismissed for noninfringement.