*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0399**

Patterson Dental Supply, Inc.,
Respondent,

vs.

Theodore Vlamis,
Appellant.

**Filed September 6, 2016
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-CV-15-5908

Charles B. Rogers, Aaron G. Thomas, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondent)

Thomas H. Boyd, Christina Rieck Loukas, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Reilly, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the district court's denial of his motion to dismiss, for lack of personal jurisdiction, respondent's trade-secret and related claims against appellant. Because sufficient minimum contacts exist to support the exercise of jurisdiction over appellant, we affirm.

## FACTS

Respondent Patterson Dental Supply, Inc. (Patterson) is a corporation with its principal place of business in Minnesota. Appellant Theodore Vlamis lives in Pennsylvania and worked for Patterson for 17 years in Scranton, Pennsylvania, as a branch manager. In August 2015, Vlamis voluntarily terminated his employment with Patterson to work for Patterson's primary competitor in the dental market.[1] Patterson alleges that Vlamis misappropriated confidential and proprietary information using his Patterson e-mail address to send information to his personal e-mail address upon the termination of his employment, and that Vlamis used removable storage devices and a personal Internet cloud storage account to copy, store, and access Patterson's confidential and proprietary information and trade secrets from a laptop computer provided to him by Patterson's Minnesota office.

In October 2015, Patterson filed a lawsuit against Vlamis in Ramsey County alleging four causes of action: (1) misappropriation of trade secrets; (2) conversion;

---

[1] Vlamis's new employer, Henry Schein Inc., is a global company headquartered in Melville, New York.

(3) breach of duty of confidentiality; and (4) breach of duty of loyalty. Patterson also sought injunctive relief prohibiting Vlamis from using or disclosing Patterson's confidential and proprietary information and trade secrets and requiring the return of the information. Vlamis moved to dismiss the lawsuit on the basis that the Minnesota court lacked personal jurisdiction over him because his only contacts with Minnesota occurred solely in his capacity as a Patterson employee. The district court denied Vlamis's motion.

The facts as they relate to personal jurisdiction are as follows. Vlamis's contacts with Minnesota are limited to contacts through his employment with Patterson. Vlamis never resided, owned property, had a bank account, or engaged in personal business activities in Minnesota. While employed by Patterson, Vlamis's sales territory was limited to Pennsylvania, New Jersey, and New York. Vlamis never solicited customers, marketed products, or made sales in Minnesota. However, while employed by Patterson, Vlamis visited Minnesota approximately 14 times, including a four-week-long training in 1999, and annual managers' meetings beginning in 2004. Patterson alleges that it shared strategic and confidential business and customer information with Vlamis at the annual managers' meetings in Minnesota. Patterson further asserts that it generated confidential and proprietary information and loaded this information onto a laptop in Minnesota. There is no record of Vlamis being physically present in Minnesota when he allegedly e-mailed himself and used a removable storage device to obtain the confidential and proprietary information.

**D E C I S I O N**

Vlamis argues the district court erred when it concluded that it had specific personal jurisdiction over him because he is a nonresident who has never purposefully availed himself of the privilege of conducting personal business in Minnesota and the contacts alleged by Patterson are insufficient to satisfy the minimum due-process requirements necessary to be forced to defend a lawsuit in Minnesota. This court reviews de novo whether personal jurisdiction exists. *Volkman v. Hanover Invs., Inc.*, 843 N.W.2d 789, 794 (Minn. App. 2014).

To preclude dismissal for lack of personal jurisdiction, a plaintiff must make a prima facie showing of jurisdiction, and a court accepts as true the complaint and supporting evidence. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn. 1976). This court must view the evidence in the light most favorable to the plaintiff. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). In a close case, doubts should be resolved in favor of retaining jurisdiction. *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 818.

A Minnesota court may exercise personal jurisdiction over an out-of-state defendant as long as jurisdiction is authorized by the long-arm statute and satisfies constitutional due-process requirements. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). Minnesota's long-arm statute extends personal jurisdiction over nonresident defendants to the limits of federal due process. Minn. Stat. § 543.19, subd. 1 (2014). To determine whether jurisdiction exists Minnesota courts may look to federal law and "the inquiry collapses into the single question of whether exercise of personal jurisdiction

4

comports with due process." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.2d 816, 818 (8th Cir. 1994); *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

The appropriate test is whether a defendant has sufficient minimum contacts with Minnesota such that exercising personal jurisdiction over him "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quotation omitted). The key to the minimum contacts analysis is whether "[t]he defendant's conduct and connection with the state must be such that the defendant should reasonably anticipate being haled into court there." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (citation omitted). The United States Supreme Court recently reiterated that "[t]he proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1123-26 (2014) (quoting *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 1487 (1984)).

The exercise of personal jurisdiction can be based on "general" or "specific" personal jurisdiction. *Valspar Corp.*, 495 N.W.2d at 411. Patterson does not allege Minnesota courts have general jurisdiction over Vlamis.[2] The question on appeal is whether Minnesota courts have specific personal jurisdiction over Vlamis. "In a specific

---

[2] General jurisdiction occurs when "a defendant conducts so much business within a state that it becomes subject to the jurisdiction of that state's courts for any purpose." *Valspar Corp.*, 495 N.W.2d at 411.

jurisdiction case, the defendant has few contacts with the forum state: in these cases involving truly minimal contact, the Due Process Clause requires that the case arise out of or be related to the contacts with the forum." *Id.*

Minnesota courts apply a five-factor test to determine whether sufficient contacts give rise to the exercise of personal jurisdiction over a nonresident defendant: (1) the quantity of the defendant's contacts with Minnesota; (2) the nature and quality of the defendant's contacts with Minnesota; (3) the connection between the claims and the defendant's contacts; (4) Minnesota's interest in providing a forum; and (5) the convenience of the parties. *Juelich*, 682 N.W.2d at 570. "The first three factors determine whether minimum contacts exist and the last two factors determine whether the exercise of jurisdiction is reasonable according to traditional notions of fair play and substantial justice." *Id.* "The first three factors are the primary factors, with the last two deserving lesser consideration." *Dent-Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn. 2007). We address these factors in turn.

*Quantity, nature, and quality of contacts*

Vlamis argues that the quantity, nature, and quality of his contacts are insufficient to exercise jurisdiction because he "has had no contacts whatsoever in his personal and individual capacity" and asserts his contacts with Patterson in Minnesota as a Patterson employee have been "less than minimal" and were all at the direction of Patterson. Vlamis's argument is premised on the assertion that contacts solely at the direction of his employer, Patterson, cannot establish a basis for personal jurisdiction over him. In support

6

of this argument, Vlamis relies on *Arkansas Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565 (8th Cir. 1986).

In *Arkansas Rice Growers*, the Eighth Circuit determined that 22 nonresident guarantors of a contractual obligation did not have sufficient contact with the forum state to confer jurisdiction. 797 F.2d at 573. The court reasoned "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation does not subject the guarantors to jurisdiction in Arkansas[,]" and "the guarantors' status as shareholders in the debtor corporation did not establish the necessary minimum contacts to satisfy due process even though the guarantors stood to profit if performance of the contract they guaranteed was successful." *Id.* The court was not persuaded by the fact that three of the guarantors went to Arkansas on one or more occasions because "[t]he law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *Id.* at 574.

Vlamis argues that we must apply the "clear law" that contact with the forum state in performance of employment duties is not sufficient to confer jurisdiction. Vlamis's argument is not persuasive because *Arkansas Rice Growers* is factually distinguishable from the instant case. Further, we are not persuaded that *Arkansas Rice Growers* stands for the premise that an employee's contacts with a forum at the direction of a corporation cannot be the basis for establishing sufficient minimum contacts to exercise jurisdiction. *Compare Arkansas Rice Growers*, 797 F.2d at 573 *with C.H. Robinson Worldwide, Inc. v. FLS Transp., Inc.*, 772 N.W.2d 528, 538 (Minn. App. 2009) (exercising jurisdiction over

7

out-of-state employees based solely on contacts that occurred through their employment), *review denied* (Minn. Nov. 24, 2009); *see also U.S. Surgical Corp. v. Imagyn Med. Techs., Inc.*, 25 F. Supp. 2d 40, 45 (D. Conn. 1998) (finding exercise of jurisdiction over a nonresident employee constitutional based on employment contacts with the forum state); *Blue Beacon Int'l, Inc. v. Am. Truck Washes, Inc.*, 866 F. Supp. 485, 490-91 (D. Kan. 1994) (finding exercise of jurisdiction over a nonresident employee constitutional based on employment contacts with the forum state).

Vlamis's status as an employee of a Minnesota-based corporation is different from that of a guarantor. Unlike the guarantors in *Arkansas Rice Growers*, Vlamis was not merely a "passive investor." 797 F.2d at 574. Throughout the entire duration of his 17-year employment relationship with Patterson, Vlamis had direct and consistent contact with the Minnesota office. As early as 1999, Vlamis traveled to Minnesota for work. Once Vlamis was promoted to branch manager his travel to Minnesota was an annual occurrence. *See Hardrives, Inc.*, 307 Minn. at 295, 240 N.W.2d at 817 (considering whether a defendant's contacts were "numerous and fairly frequent or regular in occurrence"). In addition to Vlamis's physical presence in the state, he had other employment-related contacts. He communicated almost daily with the Minnesota corporate office; at times during his employment he received compensation and benefits paid from Minnesota; and a manager from Minnesota supervised him. Vlamis was an at-will employee who benefited from his employment with Patterson, which included travel and extensive contacts with the Patterson office in Minnesota. Thus, we conclude that the quantity, nature, and quality of Vlamis's contacts support the exercise of jurisdiction.

*Connection of the contacts with the cause of action*

The connection of the contacts with the cause of action in this case also favors an exercise of jurisdiction. Patterson alleges Vlamis acquired confidential business information and customer lists in Minnesota at the annual managers' meetings and the confidential and proprietary information alleged to be misappropriated was provided to Vlamis on a laptop with information from Minnesota. *See Trident Enters. Int'l, Inc. v. Kemp & George, Inc.*, 502 N.W.2d 411, 415 (Minn. App. 1993) ("[W]hen the cause of action arises out of the contacts, [even] a single transaction can be sufficient to establish personal jurisdiction over the defendant."). Thus, Vlamis's connections are not merely based on his status as an employee of a corporation with a principal place of business in Minnesota, because the lawsuit involves allegations that he misappropriated confidential and proprietary information provided to him from Minnesota. *Cf. Arkansas Rice Growers,* 797 F.2d at 573 (holding that merely guaranteeing an obligation to a corporation in the forum state is not a sufficient basis to exercise jurisdiction). There is a nexus between the lawsuit and Vlamis's contacts with Minnesota, and as such, this factor favors the exercise of jurisdiction.

*Minnesota's interest in providing a forum*

Vlamis argues that Minnesota does not have an interest in providing a forum for the lawsuit because he is a Pennsylvania resident, who was employed in Pennsylvania, and because any information taken from Patterson was taken in Pennsylvania and therefore would only cause harm to Patterson's market in Pennsylvania, not Minnesota. However, Patterson's principal place of business is in Minnesota and some of the confidential and

9

proprietary information alleged to have been misappropriated was generated in Minnesota. Vlamis's argument fails because, although Pennsylvania may also have an interest in resolving the lawsuit, it does not follow that Minnesota does not have an interest in providing a forum. When a case involves an alleged injury to a Minnesota resident, both the resident and Minnesota have an interest in resolving the dispute here. *C.H. Robinson*, 772 N.W.2d at 538. Thus, we conclude that Minnesota's interest in providing a forum favors the exercise of jurisdiction.

*Convenience of the parties*

Vlamis argues that the convenience of the parties does not favor Minnesota exercising personal jurisdiction over him because Patterson has a substantial presence and engages in extensive business activities in Pennsylvania so there is no inconvenience to Patterson to litigate the dispute in Pennsylvania. This factor is not usually dispositive in the minimum-contacts analysis. *See Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1021 (D. Minn. 2008) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.") (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033 (1987)); *see also Multi-Tech Sys., Inc. v. VocalTec Commc'ns, Inc.*, 122 F. Supp. 2d 1046, 1052 (D. Minn. 2000) ("[D]efeats of otherwise constitutional personal jurisdiction 'are limited to the *rare situation* in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'") (quoting *Viam Corp. v. Iowa Export-Import Trading Co.*, 84

10

F.3d 424, 429 (Fed. Cir. 1996)).  Pennsylvania is not so far away that requiring Vlamis to travel to Minnesota makes jurisdiction unreasonable.  *See Volkman*, 843 N.W.2d at 797 (noting that requiring the defendant to travel from Maryland did not make jurisdiction unreasonable).  This case does not present the rare situation where Vlamis's convenience is clearly outweighed by Patterson's interest in adjudicating the dispute in Minnesota.

In sum, an analysis of the five factors used to determine whether an exercise of jurisdiction is constitutional favors the exercise of jurisdiction in this case.  Vlamis's contacts with Minnesota throughout his employment with Patterson and the allegations that some of the misappropriated confidential and proprietary information originated in Minnesota and was provided to Vlamis in Minnesota are contacts sufficient to exercise jurisdiction in this case.  This is not the rare case where the burden placed on Vlamis to defend against a lawsuit in Minnesota is outweighed by Patterson's interest in resolving the dispute in Minnesota.

Vlamis also argues the district court erred when it concluded Minnesota courts have jurisdiction over him because it misread *C.H. Robinson*, and material differences between the facts of the instant case and *C.H. Robinson* demonstrate a lack of specific personal jurisdiction over him.  This argument is not persuasive.  Personal jurisdiction depends upon a defendant's contacts with the forum in the aggregate, and the totality of the circumstances.  *C.H. Robinson*, 772 N.W.2d at 538 (quoting *Nw. Airlines, Inc. v. Astraea Aviation Svcs. Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997)).  As discussed above, analyzing the totality of the circumstance in this case demonstrates that sufficient contacts exist to exercise specific personal jurisdiction over Vlamis in Minnesota.  Although, unlike the

employees in *C.H. Robinson*, Vlamis did not sign a choice-of-law provision, choice-of-law provisions are not determinative of jurisdiction. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) ("The district court properly rejected the choice-of-law provision as a determinative factor in establishing jurisdiction as 'choice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction.'"). Because we look to the contacts in the aggregate and the totality of the circumstances, the absence of specific facts that were present in *C.H. Robinson* does not preclude the exercise of jurisdiction over Vlamis in the instant case.[3]

**Affirmed.**

---

[3] In *C.H. Robinson*, a corporation with its principal place of business in Minnesota alleged that eight former employees breached non-disclosure agreements. 772 N.W.2d at 532. The employees resided in locations ranging from Canada to Louisiana. *Id.* at 538. The employees signed employment agreements which contained a Minnesota choice-of-law provision. *Id.* In addition, C.H. Robinson alleged that the former employees all had ongoing contact with Minnesota, that the employees relied on C.H. Robinson to handle travel, expense reimbursement; and personnel issues, that the employees' supervisors were located in Minnesota; and that the employees visited Minnesota for training. *Id.* at 537. Based on these facts, we concluded that C.H. Robinson "satisfied its burden of showing that minimum contacts between its former employees and Minnesota exist so as to create specific personal jurisdiction." *Id.* at 538.