## AMERICAN POLLUTION PREVENTION COMPANY, INC. v. NATIONAL ALFALFA DEHYDRATING AND MILLING COMPANY.*

230 N. W. 2d 63.

May 23, 1975—No. 45263.

*George P. Hoke, Linde, Thomson, Van Dyke, Fairchild & Langworthy*, and *Albert Thomson*, for appellant.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty* and *Charles Quaintance, Jr.*, for respondent.

Heard before Sheran, C. J., and Rogosheske and Yetka, JJ., and considered and decided by the court en banc.

---

* Certiorari denied, 423 U. S. 894, 96 S. Ct. 193, 46 L. ed. 2d 126 (1975).

Rogosheske, Justice.

Defendant, National Alfalfa Dehydrating and Milling Company, appeals from the denial of its motion to dismiss for lack of jurisdiction. Plaintiff, American Pollution Prevention Company, Inc., brought action in district court alleging that defendant breached a written contract for the purchase of feeder cattle. Defendant by its answer denied the alleged breach, challenged the jurisdiction of the Minnesota court, and counterclaimed, alleging breach of contract by plaintiff in failing to meet specified delivery dates. Following its unsuccessful attempt to remove the action to Federal court, defendant brought a motion to dismiss on the ground that Minnesota lacked personal jurisdiction over defendant, a nonresident corporation. The motion was denied and defendant appeals. We affirm.

We review the order based solely upon the evidence presented to the trial court, as we must. Plaintiff is a Delaware corporation, headquartered in Minneapolis. Defendant is also a Delaware corporation, headquartered in Kansas. On two occasions in 1973, discussions between the parties were carried on in Minneapolis concerning the possible sale of feeder cattle. Other telephone calls concerning the transaction were made in 1973 and 1974. On January 4, 1974, the parties entered into the purchase agreement which is the subject of this dispute. The written agreement, executed in Nebraska, contemplated the sale by plaintiff to defendant of 3,800 cattle for a total purchase price of approximately $1,600,000. The cattle were to be shipped to defendant's feedlot in Nebraska from locations in South Dakota and Nebraska within specified periods of time, and the exact price was to be determined by weighing operations conducted in Nebraska.

The agreement provides that it is to be construed according to Nebraska law. Although the agreement is silent as to the place of payment, the uncontradicted affidavit of plaintiff's vice president includes an assertion that payment was contemplated to be made in Minnesota. Payments on an earlier similar contract for the sale of cattle in August 1973 had been made by check mailed

to plaintiff in Minneapolis. By the terms of the agreement, plaintiff is a "seller" and defendant is a "buyer." However, the counterclaim and its incorporated exhibit showing the basis therefor indicate that in previous agreements being superseded by the contract in dispute defendant was a seller of feed and services in fattening cattle rather than a buyer of such cattle. The affidavit of plaintiff's vice president, who is also an officer of I. S. Joseph Company, Inc., a Minnesota corporation, includes statements on information and belief that defendant's principal business relates to the sale of feed nationwide, and that approximately 10 percent of defendant's sales occur in Minnesota. The affidavit further shows that defendant in the past has sold directly to such Minnesota companies as International Milling, Ralston Purina, and Doughboy, and that defendant's representatives have frequently come to Minnesota to discuss business with buyers and with I. S. Joseph Company, which had for approximately 2 years handled substantially all marketing for defendant's exported products. The affidavit includes a copy of defendant's advertisement in a Minnesota trade publication offering dehydrated alfalfa for sale. While defendant challenges the relevance of this information, it does not challenge its factual accuracy.

The issue presented is the propriety of the trial court's exercise of jurisdiction over defendant under our corporate long-arm statute, Minn. St. 303.13, and constitutional due process requirements. Section 303.13 provides in part:

"Subdivision 1. A foreign corporation shall be subject to service of process, as follows:

\* \* \* \* \*

(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the

appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort."

If, as the trial court determined and the parties on oral argument apparently conceded, all payments were to be made in Minnesota, then the contract was to be performed in part here and, as such, fell within the reach of the statute if there were sufficient minimum contacts with this jurisdiction to meet due process requirements. Decisions of this court have consistently found in § 303.13 a legislative intent to extend Minnesota's extraterritorial jurisdiction to the maximum limits permitted by due process. Hunt v. Nevada State Bank, 285 Minn. 77, 172 N. W. 2d 292 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970) ; Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973). If defendant's activities in Minnesota are extensive enough so that due process requirements are satisfied, then the statute authorizes the exercise of personal jurisdiction.

Most of the cases cited by the parties are attempts to apply to widely varying situations the principles laid down in the well-known cases of International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945) ; McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. 2d 223 (1957) ; and Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283 (1958). As the parties acknowledge, the case of Aftanase v. Economy Baler Co. 343 F. 2d 187 (8 Cir. 1965), in its summary of the standards of those earlier cases, could justifiably control our decision. In Aftanase, the court, drawing together the principles enunciated in the United States Supreme Court cases, developed five guidelines for determining the constitutionality of the exercise of personal jurisdiction over nonresidents. This court has very recently recognized the utility and influence of the Aftanase guidelines in Northwestern Nat. Bank of St.

Paul v. Kratt, 303 Minn. 256, 260, 226 N. W. 2d 910, 913 (1975), where we summarized them as follows:

"* * * (1) [Q]uantity of the contacts; (2) quality of the contacts; (3) connection between the cause of action and the contacts; (4) interest of the state in providing a forum for an injured resident; and (5) convenience of the parties."

In Aftanase, it was observed (343 F. 2d 197):

"We also think it is fair to say that * * * Supreme Court cases establish only general and not precise guidelines. Perhaps they purposely do no more than this. We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention."

Unlike the facts of Fourth N. W. Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. 2d 732 (1962), principally relied on by defendant, in the case before us there has been a substantial and continuing quantity of general business contacts by defendant with Minnesota. Defendant has solicited business in this state through a trade paper advertisement; it has transacted business with a number of Minnesota corporations. Defendant conducts a national feed business, and it is virtually impossible to do so without Minnesota contacts. The affidavit of plaintiff's vice president, unopposed before the trial court, indicates a substantial and continuing business carried on by defendant in this state. The nature and quality of the contacts are also not without significance. Defendant appears to be a large corporation involved in agri-business which, by frequent dealings in Minnesota, has taken advantage of the protection of Minnesota law and could reasonably anticipate that its activities would have economic as well as legal consequences in Minnesota. Furthermore, there is a connection between the underlying dispute and defendant's Minnesota contacts. Discussions of the transaction

were conducted here, including telephone calls between the corporate headquarters. Payment for the cattle could reasonably be expected to be made in this state in the light of the prior dealings of the parties. The contract in dispute is one transaction among other business dealings between the parties. Finally, the dollar amount of the contract and its potential economic impact indicate a substantial Minnesota interest in protecting the rights of plaintiff, whose main officers are here. The factor of convenience appears to have little significance either way. Presumably, wherever this case is tried, someone is going to have to travel and transport corporate records.

Applying the Aftanase guidelines, we hold that sufficient contacts have been shown to sustain the exercise of jurisdiction by a Minnesota court over defendant.

Affirmed.