## HARDRIVES, INC., AND ANOTHER v. CITY OF LaCROSSE AND ANOTHER.

240 N. W. 2d 814.

February 27, 1976—No. 45527.

---

*Briggs & Morgan, B. C. Hart,* and *John L. Devney,* for appellants.

*Bronson C. LaFollette,* Attorney General of Wisconsin, *Charles A. Bleck, Michael E. Perino, Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Irving R. Brand,* and *Martin G. Weinstein,* for respondent city.

*McMahon, Darby, Evavold & Price* and *Richard H. Darby,* for respondent corporation.

Heard before Peterson, Kelly, and MacLaughlin, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Plaintiffs appeal from a pretrial judgment dismissing their action for lack of personal jurisdiction over defendants. Jurisdiction had been asserted and service of process made pursuant to the "transacts any business" provision of our long-arm statute, Minn. St. 543.19, subd. 1(b).[1]

Plaintiffs include a joint venture composed of Hardrives, Inc., a Minnesota corporation engaged in asphalt paving, and A. J. Ostreng, Inc., a Wisconsin corporation engaged in supplying paving materials, and Hardrives, Inc., acting individually. Defendants are the city of LaCrosse, a Wisconsin municipal corporation, and Perry-Carrington Engineering Corp., a Wisconsin corporation engaged in providing engineering design and supervisory services.

Sometime prior to October 1971, LaCrosse solicited bids for

---

[1] Minn. St. 543.19, subd. 1(b) reads: "As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

\* \* \* \* \*

"(b) Transacts any business within the state."

improvements to its municipal airport by sending plans and specifications to persons within and outside Minnesota. After receiving bids, allegedly including some from Minnesota contractors, LaCrosse decided to award the contract to Ostreng, and on October 4, 1971, Ostreng and LaCrosse entered into a written agreement under which Ostreng was to construct the airport improvements. This agreement was apparently executed in LaCrosse. On the same day, Ostreng and Hardrives entered into a written joint-venture agreement for the purpose of completing the LaCrosse airport improvements. Whether the joint venture agreement was made before or after the contract was awarded is in dispute.

During the course of construction, Ostreng delivered aggregate from its gravel pits in Minnesota to Hardrives' plant in Minnesota. Hardrives, in turn, used the aggregate to produce the asphalt which was used in paving at the LaCrosse airport. Defendant LaCrosse and its agent, defendant Perry-Carrington inspected on a continuing basis throughout the course of construction the aggregate, bituminous, machinery, and techniques employed by plaintiffs Ostreng and Hardrives in Minnesota. LaCrosse and Perry-Carrington also conducted discussions, negotiations, and construction planning with plaintiffs Ostreng and Hardrives in Minnesota on a continuing basis throughout the course of construction.

Disputes developed in the course of performance, and plaintiffs brought the instant action, alleging:

(1) Breach of contract, breach of warranty, and misrepresentation on the part of LaCrosse in failing to make certain disclosures in the plans and specifications;

(2) Breach of contract, breach of warranty, and misrepresentation on the part of defendants LaCrosse and Perry-Carrington in failing to provide competent inspection and supervision, wrongfully rejecting materials, and committing various other acts;

(3) Negligence on the part of defendants LaCrosse and Perry-Carrington in providing plans and specifications, in providing supervision, and in the engineering and design services provided.

On motion by defendants, the district court dismissed the action, holding that under our prior decisions the facts of this case did not confer jurisdiction over defendants. The issue on appeal is whether defendants' contacts with Minnesota are sufficient to subject defendants to the in personam jurisdiction of the Minnesota courts.

When a defendant challenges jurisdiction, the burden is on the plaintiff to prove the minimum contacts necessary to satisfy due process. All Lease Co. Inc. v. Betts, 294 Minn. 473, 199 N. W. 2d 821 (1972). At the pretrial stage, however, the plaintiff need only make a prima facie showing of sufficient Minnesota-related activities through the complaint and supporting evidence, which will be taken as true. Wuertz v. Garvey, 287 Minn. 353, 178 N. W. 2d 630 (1970).

Here, defendants moved to dismiss. We must, therefore, take the allegations contained in plaintiffs' complaint and supporting affidavits as true. So doing, the following "facts" are established:

(1)  That LaCrosse solicited bids in Minnesota;

(2)  That LaCrosse and Perry-Carrington inspected "on a continuing basis" material, machinery, and production techniques used by plaintiffs in Minnesota;

(3)  That LaCrosse and Perry-Carrington conducted negotiations, discussions, and construction planning with plaintiffs in Minnesota "on a continuing basis throughout the course of construction."

The question thus boils down to this: Do the allegations of the plaintiffs, when taken as true, show enough minimum contacts by defendants with the state to justify denial of a motion to dismiss for lack of jurisdiction?

The minimum-contacts test was first articulated in International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95 (1945), and has been discussed in previous decisions of this court. Hunt v. Nevada State Bank, 285 Minn. 77, 109, 172 N. W. 2d 292, 311 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970); Fourth Northwestern Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. 2d 732 (1962). As was stated by the court in Hanson v. Denckla, 357 U. S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. ed. 2d 1283, 1298 (1958), due process demands "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Taking plaintiffs' allegations as true, as we must, it appears that defendants have purposefully availed themselves of the privilege of conducting business within the state. Any conclusion to this effect should, however, be reached only in light of the various factors which have traditionally been applied in cases of this kind.

The best summary of the pertinent factors to be considered is contained in Judge (now Justice) Blackmun's opinion in Aftanase v. Economy Baler Co. 343 F. 2d 187 (8 Cir. 1965). Mr. Justice Blackmun's five factors include three primary factors: Quantity of the contacts, nature and quality of the contacts, and the connection or relationship between the cause of action and the contacts. The two secondary factors are the state's interest in providing a forum and the convenience of the parties. See, also, Thompson v. Kiekhaefer, 372 F. Supp. 715 (D. Minn. 1973).

*Quantity of the Contacts*

While the exact quantity of the various contacts present here is not clear from the record, we are informed by the complaint that—

"LaCrosse caused construction plans, specifications and other documentary materials to be sent into the State of Minnesota

for the purpose of inviting bids on * * * the improvement of LaCrosse Municipal Airport * * *. Such solicitations were made both within and outside the State of Minnesota and LaCrosse received responsive bids from Minnesota corporations with their principal place of business in Minnesota."

The same document informs us that inspections, discussions, negotiations, and construction planning occurred "on a continuing basis" in Minnesota. Whatever the *precise* quantity of the contacts, it seems safe to say that defendants or their representatives visited Minnesota in order to conduct business with plaintiffs on several occasions, during which they enjoyed the benefits and protections of the laws of this state. Bonhiver v. Louisiana Brokers Exchange of Baton Rouge, Inc. 255 F. Supp. 254, 259 (D. Minn. 1966). Whatever the precise number, the contacts appear to have been numerous and fairly frequent or regular in occurrence. Such contacts support the exercise of jurisdiction.

*Nature and Quality of the Contacts*

Three types of contacts are alleged in this case: Bid solicitation, inspections, and discussions of various kinds. While it appears that an allegation of bid solicitation *alone* would not support jurisdiction,[2] this is not merely a bid-solicitation case. Rather, the case involves inspections, negotiations, discussions, and planning sessions in Minnesota, and the question as a result is whether defendants' incursions into the state were casual and sporadic, or whether they evinced an intent to do business on a regular and systematic basis here. Nerlund v. Schiavone, 250 Minn. 160, 84 N. W. 2d 61 (1957).

This question could be answered either way on these facts. On the one hand, it could plausibly be argued that the inspections and discussions here were but an incidental part of the contract

---

[2] Fourth Northwestern Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. 2d 732 (1962); Waltham Precision Instrument Co. Inc. v. McDonnell Aircraft Corp. 203 F. Supp. 539 (D. Mass. 1962).

performance.[3] On the other hand, it seems equally plausible to conclude that the inspections and discussions were part of the regular business activity of LaCrosse in improving its airport and part of the regular business activity of Perry-Carrington in providing engineering design and supervisory services, and that defendants came voluntarily into Minnesota to perform these activities, thus invoking the benefits and protections of Minnesota law while present in the state. Northwestern Nat. Bank of St. Paul v. Kratt, 303 Minn. 256, 226 N. W. 2d 910 (1975); American Pollution Prevention Co. Inc. v. National Alfalfa Dehydrating & Milling Co. 304 Minn. 191, 230 N. W. 2d 63 (1975). See, also, Hanson v. Denckla, 357 U. S. 235, 78 S. Ct. 1228, 2 L. ed. 2d 1283 (1958).

We have observed on several occasions that the jurisdictional statutes of Minnesota, including Minn. St. 543.19, extend the jurisdiction of Minnesota courts to the maximum limits consistent with due process.[4] A necessary corollary of this principle is that in doubtful cases, doubts should be resolved in favor of retention of jurisdiction. Any other position would be inconsistent with the incontestable propositions that upon a motion to dismiss, the facts alleged by complaint and affidavit are to be taken as true, and that the motion should not be granted unless the plaintiff fails to make out a prima facie case. Hunt v. Nevada State Bank, 285 Minn. 77, 172 N. W. 2d 292 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970).

---

[3] See, Annotations, 20 A. L. R. 3d 1201, 23 A. L. R. 3d 551, 27 A. L. R. 3d 397.

[4] State ex rel. Nelson v. Nelson, 298 Minn. 438, 216 N. W. 2d 140 (1974); Mid-Continent Freight Lines, Inc. v. Highway Trailer Industries, Inc. 291 Minn. 251, 254, 190 N. W. 2d 670, 673 (1971); Hunt v. Nevada State Bank, 285 Minn. 77, 96, 172 N. W. 2d 292, 304 (1969), certiorari denied sub nom. Burke v. Hunt, 397 U. S. 1010, 90 S. Ct. 1239, 25 L. ed. 2d 423 (1970). The trial court's suggestion to the contrary is in error, as will be shown by the discussion which follows. .

Our conclusion is also supported by this statement made in the trial court's memorandum:

"Tested by the five factors of Aftanase, this court would have jurisdiction over the persons of the defendant[s]." [5]

And as the trial judge noted in the very next sentence of his memorandum, Federal District Court Judge Earl Larson, in a companion case to the instant matter,[6] has also ruled that the contacts here are sufficient to provide a constitutional basis for jurisdiction. To quote Judge Larson's memorandum:

"It is equally clear that service under this long-arm statute comports with the Due Process clause. The City's contacts with the Minnesota forum include [the] solicitation of contractual bids from Minnesota entities; the supplying by Ostreng of aggregate for the construction work from its sources in Minnesota to Hardrives' asphalt plant located in Minnesota; the inspection and regulation by City officials of conditions existing at Hardrives' Minnesota plant; and negotiations between the parties concerning the project being conducted in Minnesota.

"These contacts satisfy the five-pronged balancing test for determining the constitutionality of in personam jurisdiction under a long-arm statute such as M. S. A. § 543.19. See *Aftanase v. Economy Baler Company,* [343 F. 2d 187] 197. In particular, the City's solicitation of bids from Minnesota contractors constituted an intentional incursion by it in to the Minnesota market place. *See Hanson v. Denckla,* 357 U. S. 235, 253 (1958). The ap-

---

[5] Despite the above statement, the trial court granted defendants' motion to dismiss on the theory that their contacts with the state were but incidental and casual. Because we disagree, we reverse.

[6] Before plaintiffs brought this lawsuit, they first started an action based on the same facts and involving the same parties in the Federal District Court (D. Minn. Civil Action No. 4-73 Civ. 451). Because of the possibility that Judge Earl Larson would dismiss the case for lack of jurisdiction and improper venue plaintiffs began this action. Judge Larson has now ruled that Federal jurisdiction exists and the venue is proper. The Federal action remains pending.

parently frequent appearances of its agents at Hardrives' Minnesota plant further demonstrates the City's purposeful presence in this State. * * * These and other contacts are not so minimal that assertion of in personam jurisdiction here would offend 'traditional notions of fair play and substantial justice.' *International Shoe Company v. Washington,* [326 U. S. 310, 316, 66 S. Ct. 154, 158, 90 L. ed. 95, 102]."

We find the points made by Judge Larson persuasive on the question of the quality of the contacts here present.

*Source and Connection of Cause of Action with Contacts*

Because the contacts present in this case are substantial with respect both to quantity and to quality, it is not essential to find that they are also related to the cause of action.[7] And while the complaint and affidavits are less than perfectly clear,[8] it appears that this cause of action arises at least in part out of defendants' contacts with the state. For example, incompetent and unduly harsh or hypertechnical inspections are alleged elements in plaintiffs' breach-of-contract claim, and the same inspections are among the alleged contacts of defendants with the state. Plaintiffs' tort claims are anchored in defendants' negligent supervision of plaintiffs' work, and it does not seem unreasonable to conclude that at least some of the allegedly negligent supervision occurred at plaintiffs' plants and operations in Minnesota. In short, it cannot be said that the cause of action is completely unrelated to the contacts. On these facts, therefore, this Aftanase factor also argues in favor of jurisdiction.

---

[7] Perkins v. Benguet Consolidated Min. Co. 342 U. S. 437, 72 S. Ct. 413, 96 L. ed. 485 (1952); Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973); Casperson v. Board of Regents of University of Minn. 272 Minn. 210, 137 N. W. 2d 194 (1965).

[8] In close cases of jurisdiction, counsel would be well advised to file detailed affidavits specifying the quantity and quality of the contacts and their relationship to the cause of action or to request an evidentiary hearing. In this way, the contacts may be more completely evaluated in light of the factors in Aftanase v. Economy Baler Co. 343 F. 2d 187 (8 Cir. 1965).

*Interest in Providing a Forum and Convenience of Parties*

Neither forum interest nor litigational convenience is a factor of consequence in this case. Minnesota does have some interest in providing a forum, since one member of the plaintiffs' joint venture is a Minnesota corporation and the other does business here. Bonhiver v. Louisiana Brokers Exchange of Baton Rouge, Inc. 255 F. Supp. 254 (D. Minn. 1966) ; Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973). A reading of the affidavits appears to favor defendants on the issue of convenience because more witnesses and documentary materials are present in Wisconsin and the subject of the contract—the airport—is there. However, the convenience issue cannot be dispositive since plaintiff does have some right to choose his forum and there is no serious inconvenience either way. Planck v. Minneapolis, St. P. & S. S. M. Ry. Co. 274 Minn. 561, 143 N. W. 2d 641 (1966). The difference between a trial in Winona and one in LaCrosse is de minimis in terms of convenience.

What is important, though, in connection with a discussion of forum interest and convenience of the parties, is our consistent position, dating back at least to The Dahlberg Co. v. Western Hearing Aid Center, Ltd. 259 Minn. 330, 107 N. W. 2d 381, certiorari denied, 366 U. S. 961, 81 S. Ct. 1921, 6 L. ed. 2d 1253 (1961), that jurisdiction should be asserted under our long-arm statutes whenever the minimal contacts are present unless, despite the contacts, our forum is not really convenient.[9] In short, jurisdiction should be exercised unless, despite the contacts, the court finds that Minnesota jurisdiction is improper

---

[9] As the court stated in The Dahlberg Co. v. Western Hearing Aid Center, Ltd. 259 Minn. 330, 335, 107 N. W. 2d 381, 384: "* * * Where such minimal contacts exist the courts of this state may accept jurisdiction where to do so would be consonant with traditional notions of fair play and substantial justice. The reasonableness of subjecting the defendant to jurisdiction under this rule may be tested by the standards analogous to those of forum non conveniens."

on forum-non-conveniens grounds. See, Willoughby v. Hawkeye-Security Ins. Co. 291 Minn. 509, 511, 189 N. W. 2d 165, 167 (1971), quoting Johnson v. Chicago, B. & Q. R. Co. 243 Minn. 58, 79, 66 N. W. 2d 763, 776 (1954):

"* * * The district courts of this state may fairly exercise their discretion in declining to accept jurisdiction of transitory causes of action brought here by citizens or noncitizens of this state who are nonresident when it fairly appears that it would be more equitable that the cause of action be tried in some other available court of competent jurisdiction."

Here, since the contacts are substantial and related to the cause of action, jurisdiction follows because there is no forum non conveniens basis on which to decline to assert jurisdiction.

Defendants' most troublesome contention is that jurisdiction should not be exercised here because their contacts with the state were only casual and sporadic and at most but incidental to defendants' contract performance. In making this contention, defendants rely especially on Fourth Northwestern Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. 2d 732 (1962), and Branstrom & Associates, Inc. v. Community Memorial Hospital, 296 Minn. 366, 209 N. W. 2d 389 (1973). We find, however, that the contacts here are significantly more numerous and substantial than those present in Hilson. Each case must of course be decided on its own facts. Thompson v. Kiekhaefer, 372 F. Supp. 715 (D. Minn. 1973). As for the Branstrom case,[10] it is

---

[10] The Branstrom case concerned a suit brought by a Minnesota architectural firm against a North Dakota Hospital on a contract of hospital-facilities remodeling entered into by the parties in North Dakota, with both parties cognizant of the fact that the plaintiff would be performing substantial services in Minnesota (in fact more than 50 percent of the plaintiff's services were performed in Minnesota). A meeting was held in North Dakota between the parties to discuss the requirements of the North Dakota health authorities, authorization was given the plaintiff to work with another Minnesota firm on plans for an X-ray room, and certain memoranda with respect to the work and to requirements were made and filed in Minnesota.

distinguishable in that the out-of-state defendant hospital's only in-Minnesota contact with the plaintiff, besides by mail or phone, was its authorization for consultation by the plaintiff with another Minnesota corporation in Minneapolis concerning the layout of an X-ray room at the hospital. In any event, there were no discussions or inspections "on a continuing basis" in Branstrom, and because of that factual difference the case cannot be controlling here.

We rely instead upon Aftanase and upon our recent decisions in Northwestern Nat. Bank of St. Paul v. Kratt, 303 Minn. 256, 226 N. W. 2d 910 (1975); American Pollution Prevention Co. Inc. v. National Alfalfa Dehydrating and Milling Co. 304 Minn. 191, 230 N. W. 2d 63 (1975). In Northwestern National Bank we held that discussions and meetings concerning a contract within this state were sufficient contacts. In American Pollution, we upheld jurisdiction based in part on solicitation of business in Minnesota. With four of the five factors in Aftanase and two of our recent decisions pointing toward jurisdiction, we find substantial reason for reversing.

Reversed and remanded for further proceedings consistent with this opinion.