**The TORO COMPANY and Toro Sales Company, Plaintiffs, Appellants,**

v.

**BALLAS LIQUIDATING COMPANY and Weed Eater, Inc., Defendants,**

and

**H. Spencer Stone Associates, Inc., Defendant, Appellee.**

**No. 77–1686.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1978.

Decided March 29, 1978.

Eugene M. Warlich, Doherty, Rumble & Butler, St. Paul, Minn., for appellant; Alan I. Silver, St. Paul, Minn., on the brief.

James H. Lehmann, Jr., Houston, Tex., for appellee; Green & Sims, Houston, Tex., on the brief.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

The Toro Company and Toro Sales Company (herein referred to jointly as Toro) bring this interlocutory appeal from an order of the district court dismissing, for want of personal jurisdiction, Toro's complaint as against H. Spencer Stone Associates, Inc., d/b/a International Marketing Associates (IMA). We agree with the district court that application of the Minnesota long arm statute to acquire jurisdiction over the defendant in this case would be unconstitutional and, therefore, we affirm the order of dismissal.

## I.

The Toro Company is a Minnesota corporation engaged in the manufacture and sale of lawnmowers, tractors and other lawn and garden products. Toro Sales Company is a wholly owned subsidiary of The Toro Company. Through its own sales divisions and through arrangements with independent contractors, Toro Sales Company acts as a wholesale distributor of Toro and other manufacturers' products.

IMA is a Texas corporation whose business consists primarily of assisting manufacturers and assembly companies in developing markets for their products. In 1972 IMA entered into an agreement with Weed Eater, Inc.,[1] whereby IMA was to act as the exclusive sales agent for Weed Eater products. Pursuant to this agreement IMA and

---

1. Weed Eater, Inc., was originally incorporated in Texas in 1972 under the name of Weed Eaters, Inc., and later reincorporated in Delaware under the name of Weed Eater, Inc., in 1976. On March 10, 1977, eight days after this lawsuit was filed, Weed Eater changed its name to Ballas Liquidating Company. Ballas has adopted a plan of dissolution and liquidation and will be completely dissolved by March of 1978.

its president, H. Spencer Stone, established a nationwide network of distributors for Weed Eater products; ten sales regions were created, each having a regional manager responsible to Stone. In the New York, Los Angeles and San Francisco areas, IMA chose to distribute the Weed Eater products through local sales divisions of Toro.

IMA continued to act as a marketing agent for Weed Eater, Inc., from 1972 through mid-1976.[2] During that period the New York division of Toro was terminated as a distributor for Weed Eater products; it was this action which precipitated the instant lawsuit against IMA.[3] Toro's complaint alleges that termination of its New York division was, among other things, part of an unlawful conspiracy between IMA and the other named defendants to initiate a boycott of Toro products, in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.

Seeking to sustain jurisdiction over IMA in a Minnesota forum, Toro introduced evidence showing that IMA had conducted activities in Minnesota under its agreement with Weed Eater, Inc. Throughout the term of this agreement, IMA's regional sales director for the area which included Minnesota would call upon and visit local distributors of Weed Eater products to assist the distributors in their sales efforts. The district court found that in the one year period preceding initiation of this lawsuit, approximately $400,000 worth of Weed Eater products were sold in the Minnesota market.

On the facts as above stated, the district court concluded (1) that IMA's activities in Minnesota fell within the literal provisions of that state's long arm statute, but that (2) maintenance of suit against IMA in a Minnesota forum would offend traditional notions of fair play and substantial justice. Toro's complaint against IMA was dismissed accordingly.

## II.

We note at the outset two propositions about which there is no dispute. First, it is clear that Minnesota's long arm statutes, Minn.Stat.Ann. §§ 303.13 and 543.-19, authorize the assertion of jurisdiction over foreign corporations to the fullest extent allowed by constitutional due process. *Northern States Pump & Supply Co. v. Baumann,* Minn., 249 N.W.2d 182, 184 (1976); *American Pollution Prevention Co. v. National Alfalfa Dehydrating & Milling Co.,* 304 Minn. 191, 193, 230 N.W.2d 63, 65, *cert. denied,* 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975). Second, it is likewise clear that Toro's cause of action did not arise out of IMA's activities in the state of Minnesota. We are therefore presented with the single question whether, on the record before us, Minnesota may constitutionally assert jurisdiction over a foreign corporation whose only connections with that state are wholly unrelated to the claim sued upon. We conclude that it may not.

In reaching this conclusion, we begin with the premise that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe [Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945),]* and its progeny." *Shaffer v. Heitner,* 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977). We thus consider whether IMA's activities in the state of Minnesota are such as to make it reasonable "to require the corporation to defend the particular suit which is brought there." *International Shoe, supra,* 326 U.S. at 317, 66 S.Ct. at 158.

Since *International Shoe,* the "central concern of the inquiry into personal jurisdiction" has been "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner, supra,* 433 U.S.

---

**2.** In July 1976 Weed Eater terminated its relationship with IMA and began its own marketing program.

**3.** The Toro divisions in Los Angeles and San Francisco were also terminated and these ac-

tions form the basis of additional counts by Toro against the other named defendants. At the time these other divisions were terminated the relationship between IMA and Weed Eater had already come to an end. *See* note 2 *supra.*

186, 204, 97 S.Ct. at 2580. This court has considered five factors as being especially significant in characterizing that relationship in a given situation: (1) the quantity of the defendant's contacts with the forum state, (2) the nature and quality of those contacts, (3) the relationship between the cause of action and the contacts, (4) the interest of the state in providing a forum for the litigation, and (5) the convenience of the parties. *See Aaron Ferer & Sons Co. v. American Compressed Steel Co.,* 564 F.2d 1206, 1209 (8th Cir. 1977), and cases cited therein.

Just as frequently, we have stressed that application of these factors does not provide a slide rule by which fundamental fairness can be ascertained with mathematical precision. For instance, we have said that the first three of the factors listed are of "primary" concern in deciding whether jurisdiction may reasonably be asserted, and that the last two are of only "secondary" importance. *See, e. g., Gardner Engineering Corp. v. Page Engineering Co.,* 484 F.2d 27, 31 (8th Cir. 1973); *Thompson v. Ecological Science Corp.,* 421 F.2d 467, 469 (8th Cir. 1970).

Having said this, we are met with Toro's assertion that any one or more of the five enumerated factors need not be present *at all* to sustain jurisdiction in a particular case. Thus, Toro argues, the absence of any connection between its cause of action and IMA's sales activity in Minnesota should not preclude a finding of jurisdiction in this case.

We reject this argument. While the significance of a defendant's forum activities may vary with the circumstances, Toro points to no case, and we have found none, in which we have sustained jurisdiction over a foreign corporation whose forum contacts were analogous to those of IMA and which were wholly unrelated to the litigation. Only recently, we again rejected an argument that jurisdictional significance should be attached to a foreign corporation's forum activities which were unrelated to the cause of action. *See Aaron Ferer & Sons Co. v. American Compressed Steel Co., supra,* 564 F.2d at 1211.

In *Shaffer v. Heitner, supra,* the Supreme Court rejected a similar argument. In that case, jurisdiction over nonresident defendants was sought to be sustained solely on the basis of the defendants' ownership of property located within the forum state. Finding the argument unpersuasive, the Court explained:

This argument, of course, does not ignore the fact that the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendants, and the litigation. For example, when claims to the property itself are *the source of the underlying controversy between the plaintiff and the defendant,* it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest. * * The presence of property may also favor jurisdiction in cases, such as suits for injury suffered on the land of an absentee owner, where the defendant's ownership of the property is conceded but *the cause of action is otherwise related to rights and duties growing out of that ownership.*

\* \* \* \* \* \*

Thus, although the presence of the defendant's property in a State might suggest the existence of *other ties* among the defendant, the State, *and the litigation,* the presence of the property alone would not support the State's jurisdiction.

*Id.,* 433 U.S. 186, 207–209, 97 S.Ct. at 2582 (emphasis supplied; footnotes omitted.)

The requirement that the defendant's forum activities be related to the plaintiff's cause of action thus bears particular significance to the issue of whether suit can properly be maintained in that state. The reason for this is simple. When a corporation chooses to avail itself of the protection of the forum state's laws for the purpose of engaging in economic activity in that state, it assumes certain risks as well. One of these is the risk that its activities in that state will result in litigation. Having bene-

7

fited from the markets of the forum, it is not unreasonable to require the defendant to respond in the courts of the forum.

The converse is also true. Thus, when the claim sued upon is unrelated to the defendant's forum activities, he may have "no reason to expect to be haled before [the forum state's] court[s]." *Shaffer v. Heitner, supra,* 433 U.S. 186, 216, 97 S.Ct. at 2586. That is the conclusion we must reach in this case. The record reveals that IMA's activities in Minnesota consisted by and large of the occasional visits of IMA's regional sales manager to local distributors of Weed Eater products in connection with its agreement with Weed Eater, Inc. It is not without significance that these products were not distributed in Minnesota through Toro's sales divisions. Finally, the district court found that IMA "ceased conducting any activity within [Minnesota] one year ago when it terminated its business relationship with Weed Eater." Under these circumstances we hold that it would be so unreasonable as to be unconstitutional to require IMA to respond in Minnesota to Toro's complaint on a cause of action arising out of events transpiring in New York and wholly unrelated to IMA's activities in the state of Minnesota.

Judgment affirmed.