Janet HELTEN, Hennepin
County, Respondent,

v.

ARTHUR J. EVERS CORPORATION,
Defendant and third party
Plaintiff, Respondent,

v.

SUNSHINE SCIENTIFIC
INSTRUMENTS, INC.,
Appellant,

v.

INTERNATIONAL PAPER COMPANY,
third party Defendant, Respondent.

Nos. C8–85–315, CX–85–316.

Court of Appeals of Minnesota.

Aug. 6, 1985.

Review Denied Oct. 21, 1985.

Douglas E. Schmidt, Minneapolis, for Janet Helten, respondent.

Phillip A. Cole, Minneapolis, for Arthur J. Evers Corp., defendant and third party plaintiff, respondent.

Eric J. Magnuson, David F. Fitzgerald, Jeremiah P. Gallivan, Minneapolis, for Sunshine Scientific Instruments, Inc., appellant.

Duane E. Arndt, Minneapolis, for International Paper Co., third party defendant, respondent.

Heard, considered and decided by LANSING, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Janet Helten commenced a personal injury action against respondent Arthur J. Evers Corp., the manufacturer of a paper splicing machine that allegedly injured Helten, and appellant Sunshine Scientific Instruments, Inc., the manufacturer of an electrical device for the splicing machine. Sunshine appeals from the trial court's order denying its motion to dismiss for lack of personal jurisdiction. We affirm.

## FACTS

Janet Helten was injured on September 15, 1981, while operating equipment as an employee of International Paper Co., Golden Valley, Minnesota. Her hand was caught in a "web splicer" manufactured by Arthur J. Evers Corp. and sold to International Paper Co.

Sunshine Scientific Instruments, Inc., a Pennsylvania corporation with its only branch office in Maryland, built the splice speed control devices which were subsequently incorporated into the "web splicer." It is not licensed to do business in Minnesota nor did it ever have salesmen or representatives in Minnesota. It solicits business only on the east coast.

The control unit was designed by William Schwenk of International's Philadelphia office. Schwenk recommended to the International plant superintendents that they purchase the device for each splicing machine and send their purchase orders directly to Sunshine. International's Golden Valley plant superintendent placed an order for five devices which Sunshine shipped F.O.B. Philadelphia.

## ISSUE

Did Sunshine have the requisite minimum contacts with Minnesota to permit Minnesota to exercise personal jurisdiction over it?

## ANALYSIS

Sunshine argues it did not have sufficient minimum contacts with Minnesota so as to permit a constitutional exercise of personal jurisdiction under Minnesota's long-arm statute. The long-arm statute provides for jurisdiction over a foreign corporation when that corporation commits an act outside of Minnesota that causes injury or property damage inside the state. Minn. Stat. § 543.19, subd. 1(d) (1984).

"Minnesota interprets its long-arm statute * * * to extend personal jurisdiction in its courts to the limits of the due process clause of the Fourteenth Amendment." *Mid-West Medical, Inc. v. Kremmling Medical-Surgical Associates, P.C.*, 352 N.W.2d 59, 60 (Minn.Ct.App. 1984). Due process requires sufficient minimum contacts between the nonresident defendant and the forum state so that requiring them to defend in the state does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident must

be able to reasonably anticipate being haled into the forum state's court. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Minnesota has adopted the following five factor test:

An analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties.

*Dent-Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983). The first three factors are the primary factors. *Id.*

■ The lack of direct contacts with a state does not necessarily preclude personal jurisdiction. In products liability cases, the United States Supreme Court has adopted the "stream-of-commerce" theory of personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In *World-Wide,* the court held that although foreseeability is not alone a determinative factor, it is still relevant. "[T]he foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. In dicta, the court stated:

[I]f the sale of a product of a manufacturer or distributor * * * is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that *delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*Id.* at 297–98, 100 S.Ct. at 567. (emphasis added). Due process requirements are satisfied under the "stream-of-commerce" theory because the manufacturer avails itself of the "protections and benefits" of the forum state's laws through the protection those laws provide for the product and through the pecuniary benefit from indirect sales to forum residents. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 285 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).

■ This case is stronger than the typical "stream-of-commerce" case wherein a manufacturer sells its product to a third-party manufacturer which in turn sells its own product in the forum state. In the present case, Sunshine not only sold its product to International's other plants around the country, thereby placing their product into the "stream-of-commerce," but also accepted International's order for five control devices which it voluntarily placed on the Minnesota market.

When the quantity of contacts is minimal, the nature and quality become dispositive. Sunshine relies upon *Maiers Lumber & Supply, Inc. v. Chancey Trailers,* 354 N.W.2d 585, 587 (Minn.Ct.App.1984), where we found insufficient contacts to compel the foreign corporation to defend a suit in Minnesota. In *Maiers,* a Minnesota lumber company purchased truck trailers from a Florida manufacturer. Negotiations were by telephone and mail and were initiated by the Minnesota lumber company. The Florida manufacturer's only contact with Minnesota was the sale and delivery of the trailers. After noting that the Florida manufacturer never transacted or solicited any other business in Minnesota and never advertised here, this court held that "the small number of contacts and the relatively isolated nature of the transaction persuade us that Minnesota courts cannot constitutionally exercise jurisdiction over" the Florida corporation. *Id.*

Sunshine argues that the nature of its contact with Minnesota was similar to the Florida manufacturer for it was entirely responsive and not initiative in any manner. "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239.

*Maiers* can be distinguished. In *Maiers* this court was not confronted with the "stream-of-commerce" theory of jurisdiction. The Florida corporation was sued for breach of express and implied warranties, on an isolated, direct sale. This was not a products liability claim; the product did not cause the injury in Minnesota.

In this case, Sunshine elected to allow its product to be shipped to International's plants, which it knew were located throughout the country. By that conduct, it placed its product in the stream-of-commerce and should have therefore reasonably anticipated that it could be "haled into" a Minnesota court if its product injured a Minnesota resident.

■ This issue is close. In doubtful cases as to whether or not jurisdiction should be extended against foreign defendants under the long-arm statute, "doubts should be resolved in favor of retention of jurisdiction." *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976). Accordingly, we conclude that the use of Sunshine's products in Minnesota is sufficient contact with Minnesota to satisfy due process requirements, especially when the underlying suit arises from alleged defects in the product itself.

## DECISION

Sunshine had the requisite minimum contacts with Minnesota to permit Minnesota to exercise personal jurisdiction over it. The trial court's denial of Sunshine's motion to dismiss is affirmed.

**Affirmed.**