Christian C. HANSON, et al., Respondents,

v.

JOHN BLUE COMPANY, a DIVISION OF BURNLEY CORPORATION, Appellant,

and

Lindsay Bros. Company, Respondent.

No. C1–86–165.

Court of Appeals of Minnesota.

June 17, 1986.

Review Denied Aug. 13, 1986.

John P. Clifford, Michael C. Snyder, Minneapolis, for Christian C. Hanson, et al.

John M. Kennedy, Jr., Marie A. Darst, Jardine, Logan & O'Brien, St. Paul, for John Blue Company, a Div. of Burnley Corp.

Joseph M. Stocco, David K. Wendel, Edina, for Lindsay Bros. Co.

Heard, considered, and decided by FOLEY, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

John Blue Company appeals from an order of the District Court, Hennepin County, denying its motion to dismiss this action on

the basis of lack of personal jurisdiction and forum non conveniens. We reverse, and remand with instructions to dismiss the action.

## FACTS

The plaintiffs, Christian and Susan Hanson, are residents of Wisconsin. In 1981, Christian Hanson was doing some maintenance work on an ammonia applicator manufactured by defendant John Blue, Inc. when anhydrous ammonia unexpectedly shot into his left eye, causing severe injury. The plaintiffs commenced this action in the district court for Hennepin County, Minnesota against John Blue and Lindsay Brothers, Inc.

John Blue is a division of Burnley Corporation, a Delaware corporation. John Blue's principal place of business and main office are in Huntsville, Alabama. It is not licensed to do business in Minnesota and has no offices or sales outlets in the state. It has advertised in national publications, but has never engaged in advertising specifically calculated to reach Minnesota. Approximately three percent of its products eventually reach Minnesota.

John Blue manufactured the applicator in question and sold it to defendant Lindsay Brothers, Inc., a Minnesota corporation which sells agricultural equipment. Lindsay Brothers sold the applicator to Meyer Implement in Baldwin, Wisconsin. Meyer sold the applicator to an Ed Lemke, who subsequently traded it in at Knutson Implement in Hammond, Wisconsin. The plaintiffs purchased the product, in a used condition, from Knutson Implement.

The accident occurred in Wisconsin on May 19, 1981. The statutes of limitation in Wisconsin, Alabama, and Delaware have all expired. Minnesota is the only available forum.

## ISSUE

Does defendant have sufficient minimum contacts with Minnesota to permit Minnesota courts to constitutionally exercise personal jurisdiction over it?

## ANALYSIS

When personal jurisdiction is challenged, the burden is on the plaintiff to prove that sufficient contacts exist. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). The plaintiff need make only a prima facie showing of sufficient contacts through the allegations contained in the complaint and supporting affidavits, depositions, or other discovery evidence. *Id.* When reviewing an order denying a motion to dismiss for lack of jurisdiction, the plaintiffs' allegations are accepted as true. *Hunt v. Nevada State Bank,* 285 Minn. 77, 82–83, 172 N.W.2d 292, 296–97 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970).

The Minnesota long-arm statute permits a state court to exercise personal jurisdiction:

> over any foreign corporation or any non-resident individual * * * in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:
>
> \*    \*    \*    \*    \*    \*
>
> (b) *Transacts any business within the state * * *.*

Minn.Stat. § 543.19, subd. 1 (emphasis added).

Plaintiffs allege jurisdiction exists under subdivision 1(b). There is no question that John Blue transacts some business in Minnesota. However, only causes of action "arising from" the acts enumerated in subdivision 1 may be asserted against a defendant when jurisdiction is based on the long-arm statute. *See id.,* subd. 3. Here, the cause of action did not arise from the defendant's contacts with Minnesota. The cause of action arose from an accident in Wisconsin in which a Wisconsin resident was injured. The only nexus between the cause of action and defendant's contacts with Minnesota is that the product passed

through Minnesota in the chain of distribution.

■ Moreover, John Blue's contacts with Minnesota do not satisfy the due process standard. Due process requires that there be sufficient "minimum contacts" between a nonresident defendant and the forum state so that requiring the defendant to defend itself in the forum state does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This due process requirement is founded on two separate but related concerns: first, respect for state sovereignty and territoriality, *see Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878); and second, more recently, fairness to the nonresident defendant. This second concern requires that defendant's contacts with the forum state be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). The Minnesota Supreme Court has stated that:

> In *World-Wide* and [*Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980)], the United States Supreme Court attempted to slow the inexorable expansion of jurisdiction in state courts by underlining the significance of territoriality and de-emphasizing the relative importance of "fairness" to the defendant. These cases evidence a dramatic shift in the constitutional theoretical underpinnings of personal jurisdiction. After *World-Wide* and *Rush*, the critical focus in any jurisdictional analysis must be on "the relationship among the defendant, the forum and the litigation." *Rush*, 444 U.S. at 327, 100 S.Ct. at 576 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).

*West American Insurance Co. v. Westin, Inc.*, 337 N.W.2d 676, 678–79 (Minn.1983) (citations omitted).

■ Minnesota has adopted a five-factor test originally set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965), to determine the sufficiency of a defendant's contacts with Minnesota:

> An analysis of minimum contacts requires consideration of (1) the quantity of contacts, (2) the nature and quality of contacts, (3) the source and connection of those contacts to the cause of action, (4) the interest of the forum state, and (5) the convenience of the parties.

*Dent-Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn.1983). The first three factors are primary; the other two merit secondary consideration. Applying the *Aftanase* test to this case compels reversal of the trial court.

a. *Quantity of contacts:*

John Blue states in its affidavits that it has no office, sales outlet, agent for service of process, or similar contacts in Minnesota. It admits, however, that approximately three percent of its products, which are sold F.O.B., Huntsville, Alabama, eventually reach Minnesota.

■ The fact that John Blue ships its products F.O.B. Huntsville, Alabama does not preclude the exercise of jurisdiction by Minnesota. The

> fairness requirement of due process does not extend so far as to permit a manufacturer to insulate itself from the reach of the forum state's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products.

*DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981), *quoted in Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 721 (Minn.1985).

The quantity of contacts, standing alone, weighs in favor of jurisdiction. However, no one of the five factors is dispositive; the others must still be addressed. *See Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267 (8th Cir.1978).

b. *Nature and quality of the contacts:*

■ In reviewing the nature and quality of the contacts, this court attempts to

ascertain whether the defendant "purposefully availed" itself of the benefits and protections of Minnesota law. *Dent-Air*, 332 N.W.2d at 907. This analysis entails consideration of the foreseeability of the product reaching the forum state and, more importantly, whether the defendant solicited business in the state or "was brought into contact incidentally through the unilateral activity of the plaintiff." *Id.*

Minnesota has adopted the "stream of commerce" theory of personal jurisdiction first enunciated by the United States Supreme Court in *World-Wide Volkswagen*. Under this theory, "[a] manufacturer who places its product in the stream of commerce in an effort to serve, directly or indirectly, markets in a jurisdiction is subject to suit in that jurisdiction * * *." *Rostad*, 372 N.W.2d at 721.

Thus, if the injury here had occurred in Minnesota, John Blue would be subject to our jurisdiction under the stream of commerce theory. However, the injury occurred in Wisconsin, to a Wisconsin resident. The *World-Wide Volkswagen* court stated in dicta:

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States *if its allegedly defective merchandise has there been the source of injury to its owner or to others.*

444 U.S. at 297–98, 100 S.Ct. at 567 (emphasis added).

Similarly, in *Helten v. Arthur J. Evers Corp.*, 372 N.W.2d 380 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 24, 1985), another products liability case, this court stated:

In this case, Sunshine elected to allow its product to be shipped to International's plants, which it knew were located throughout the country. By that conduct, it placed its product in the stream-of-commerce and should have therefore reasonably anticipated that it could be "haled into" a Minnesota court *if its product injured a Minnesota resident.*

*Id.* at 383 (emphasis added).

Respondents avoid the fact that the injury here did not occur in the forum state, and would have this court extend the stream-of-commerce theory to subject a manufacturer to suit in any state the product passed through before reaching the state where the injury occurred. Respondents have not cited any cases which support such an extension of *World-Wide Volkswagen*.

c. *The relationship between the contacts and the cause of action:*

■ Where the defendant's contacts with the forum state are unrelated to the cause of action, those contacts cannot sustain the exercise of personal jurisdiction.[1] In *Toro*, the Eighth Circuit stated that:

> Toro points to no case, and we have found none, in which we have sustained jurisdiction over a foreign corporation whose forum contacts * * * were wholly unrelated to the litigation. Only recently, we again rejected an argument that jurisdictional significance should be attached to a foreign corporation's forum activities which were unrelated to the cause of action.

*Toro*, 572 F.2d at 1270 (citation omitted). *See also Waite v. Waite*, 367 N.W.2d 679 (Minn.Ct.App.1985).

Here, the relationship between John Blue's Minnesota contacts and the cause of action is remote. The only connection between the two is that the product passed

---

1. *American Pollution Prevention Co. v. National Alfalfa Dehydrating & Milling Co.*, 304 Minn. 191, 230 N.W.2d 63, *cert. denied*, 423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975), cited by respondents, is not authority to the contrary.

In that case, there was a connection between the defendant's contacts with Minnesota and the underlying suit. *Id.* 304 Minn. at 195, 230 N.W.2d at 66.

through Minnesota on its way to Wisconsin, where the accident occurred.

### d. *The interest of the forum state:*

Minnesota has very little interest in providing a forum for this litigation between two nonresidents. The plaintiff, a resident of Wisconsin, was injured in Wisconsin. Defendant is a Delaware corporation with its principal place of business in Alabama. This factor, although of secondary importance, weighs against jurisdiction. *Cf. Rostad*, 332 N.W.2d at 722 (where Minnesota was site of accident and a Minnesota resident was injured, Minnesota has an interest in providing a forum).

### e. *The convenience of the parties:*

Minnesota does not appear to be the most convenient forum for this litigation. Plaintiff has received medical care in Minnesota and medical witnesses presumably reside here. However, the witnesses to the accident, including the plaintiffs, as well as previous owners of the product, reside in Wisconsin. Again, although this factor is of secondary importance, especially in light of the fact that Minnesota is the only available forum, it weighs against jurisdiction.

■ In summary, the product involved in this case merely passed through Minnesota on its way to Wisconsin where, after being resold several times, it allegedly caused respondent's injuries. Although appellant has some contacts with Minnesota, these contacts are not sufficiently related to the respondents' cause of action to support personal jurisdiction. For Minnesota to assert jurisdiction over appellant in this case would offend our traditional notions of fair play and substantial justice.

The dissent argues that we "place undue weight on the fact that the plaintiff is a Wisconsin resident and the injury occurred in Wisconsin," and cites *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), for the proposition that these factors are unrelated to the

defendant's contacts and should not defeat jurisdiction. In *Keeton*, however, the Supreme Court stated that the plaintiff's residence, while not a separate jurisdictional requirement, is relevant to the inquiry into the relation among the defendant, the forum, and the litigation:

> Plaintiff's residence may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum. That is, plaintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum.

*Id.* at 780, 104 S.Ct. at 1481. In addition, it should be noted that the *Keeton* decision, which held that jurisdiction existed, turned in large part on the Court's determination that the plaintiff had been injured in the forum state.[2]

Because we hold that defendant has insufficient minimum contacts to support personal jurisdiction, we need not address the issue whether this action should be dismissed on grounds of forum non conveniens.

### DECISION

Defendant has insufficient minimum contacts with Minnesota to sustain personal jurisdiction. The order of the district court denying defendant's motion to dismiss is reversed and the matter is remanded with instructions to dismiss the action for lack of personal jurisdiction over the defendant.

Reversed and remanded.

LANSING, Judge (dissenting).

I respectfully dissent.

The majority places undue weight on the fact that the plaintiff is a Wisconsin resident and the injury occurred in Wisconsin. These facts are unrelated to the defendant's contacts with Minnesota. The plaintiff's lack of residence in the forum state

---

**2.** The court held in *Keeton* that a plaintiff in a defamation action against a national publication is injured in every state in which substan-

tial numbers of copies of the publication are distributed.

will not defeat jurisdiction established on the basis of defendant's contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984). The majority's analysis is directed more toward the convenience of the forum than the defendant's contacts with the forum.

John Blue manufactured the anhydrous ammonia applicator that injured the plaintiff. It sold the very applicator that injured the plaintiff to Lindsay Brothers, Inc., in Minnesota. It is not necessary to use a "stream of commerce" theory to assert jurisdiction over a manufacturer that sent the product to this state without attempting to insulate itself through use of an intermediary. *See World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Rostad v. On-Deck, Inc.,* 372 N.W.2d 717, 721 (Minn.1985). And although the injury occurred in Wisconsin, the plaintiff's cause of action arises directly from John Blue's contacts with Minnesota. *See* § 543.19, subd. 3.

In addition, John Blue admits that three percent of its total business involves products that reach Minnesota.[1] If John Blue is carrying on part of its general business in Minnesota, that should be sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in Minnesota. *See Keeton,* 104 S.Ct. at 1481; *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 446–48, 72 S.Ct. 413, 418–20, 96 L.Ed. 485 (1952) (a state is free to assert or decline jurisdiction over a corporation that carries on a systematic, but limited, part of its general business there even though none of the parties was a resident of the forum state and the cause of action was unrelated to the corporation's activities in the forum).

In reviewing motions to dismiss founded on Minn.R.Civ.P. 12.02, allegations in the complaint must be taken as true. *Schermerhorn, v. Hoiland,* 337 N.W.2d 692, 693 (Minn.1983). Here the plaintiff has alleged facts that, if true, show that John Blue sought to serve the Minnesota market and is consequently subject to suit here when the cause of action arises directly out of its activity within the state. Plaintiffs have made at least a sufficient showing to survive a Rule 12 motion. *See id.* at 694. I would hold the trial court correctly denied John Blue's motion to dismiss for lack of jurisdiction. I would also hold the trial court did not abuse its discretion in refusing to dismiss on the ground of forum non conveniens. *See Bergquist v. Medtronic, Inc.,* 379 N.W.2d 508 (Minn.1986).

---

1. No jurisdictional discovery has been performed in this case; only a few weeks elapsed between service of the complaint and John Blue's motion to dismiss. The dollar volume this three percent figure represents and its significance in relation to John Blue's "total business" in other states is not of record. It may be that John Blue does more business in Minnesota than in Wisconsin, the only state the majority indicates is an appropriate forum.