## GEORGE A. PLANCK v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.

143 N. W. (2d) 641.

June 17, 1966—No. 40,206.

*Lindquist, Magnuson & Glennon, Edward M. Glennon,* and *William B. Stukas,* for relator.

*William H. DeParcq* and *DeParcq & Anderson,* for respondent.

PER CURIAM.

This is an action for personal injuries under the Federal Employers' Liability Act against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. It was instituted in the District Court of Hennepin County. Defendant moved "for an Order dismissing [it] with prejudice to the commencement of any further action by * * * Plaintiff against * * * Defendant upon the same cause * * * in any District Court of the State of Minnesota, but otherwise without prejudice." This motion was denied by order dated December 3, 1965. Thereafter this court issued a writ of mandamus requiring that the District Court of Hennepin County enter its order granting the motion or show cause why the order of December 3, 1965, should not be vacated.

It is not disputed that defendant does business in Hennepin County where the action was started. In support of its motion to dismiss the action, defendant submitted affidavits setting forth numerous grounds why it would be more convenient to try the action in a county in upper Michigan, where plaintiff resides and where a number of witnesses live in close proximity.

In resisting the motion plaintiff asserted that if the action were dismissed on defendant's motion plaintiff would forever be barred by statutes of limitations from asserting a part of his claim against defendant. He asserted further that under the Federal Employers' Liability Act an injured employee may file his cause in any state or Federal court in any judicial district where the defendant railroad company is engaged in doing business; and that defendant is a Minnesota corporation with its principal place of business in

Minnesota, where its officers reside. He asserted further that plaintiff had been taken to Minneapolis by defendant for the purpose of having his physical condition evaluated and had been examined in a hospital and by doctors in Minneapolis, so that there would be no great inconvenience to defendant if it decided to submit the testimony of such doctors or the records of such hospital. He also asserted that a principal witness who will testify as to the facts resides 190 miles from Minneapolis and that one of the other witnesses would not be subject to subpoena in either Minnesota or Michigan.

In a memorandum attached to its order denying defendant's motion for dismissal, the following is set forth:

"* * * This right of venue selection, however, is an important one and was described in Boyd v. Grand Trunk Western R. Co., 338 U. S. 263, 70 S. Ct. 26, as follows:

" 'The right to select the forum granted in Section 6 is a substantial right.'

"Although it was not an FELA case and is distinguishable on its facts, the general principles which guide the Court here are to be deduced from Gulf Oil v. Gilbert, 330 U. S. 501, 67 S. Ct. 839, as interpreted by the Minnesota Supreme Court in the above cases. The principles which control the Court's discretion may be generally stated and summarized as follows:

*　　*　　*　　*　　*

"(3) That the power to dismiss an action under the rule of *forum non conveniens* is to be cautiously exercised and '* * * unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'

"(4) That access to sources of proof, compulsory process where needed, expense of trial, view of the premises, the condition of the court calendar, and whether the court calendar has been congested by the importation of similar cases, are all factors to be considered.

"(5) That in this, as in other venue matters generally, a clear case of inconvenience must be spelled out definitely and unequivocally by defendant.

"(6) That the discretion of the trial judge is a broad one and subject to review only for its abuse.

"The position of defendant here centers largely on collateral claims of a general nature with reference to the necessity of proving railroad rules, payroll records, engineering and other business records, hospital records, and x-rays. There was also some claim that it may be necessary to produce hospital personnel or supervisory personnel. Most of such problems should cause no particular trouble and can be resolved at the pre-trial conference in view of plaintiff's waiver of foundation and proof of authenticity.

"On many of the essential factors, the parties appear to be substantially in agreement. First, the primary and essential witness to each accident was plaintiff's superior, the section foreman, Donald E. Latvala of Marengo, Wisconsin. He is still in defendant's employ. He resides about equidistant between Minneapolis and the places of trial suggested by defendant. He is not subject to compulsory process either in the State of Michigan or the State of Minnesota. The next most important witness would appear to be Alex Norman, 420 East Harrie, Newberry, Michigan, who appears to be still in the employ of the defendant. However, Norman has information only as to the accident of June 28, 1963.

"On the issue of damages, it appears to be undisputed that defendant brought plaintiff to Minneapolis and hospitalized him at Northwestern Hospital for about one week in April of 1964. At this time he received examinations, x-rays, treatment, and 'evaluation' from the following local doctors:

"(1) Dr. Harvey E. Nelson.

"(2) Dr. Richard Jones, orthopedist, of the Evans, Reiley, Rosendahl, Gustafson and Trost Clinic.

"(3) Dr. Andrew Leemhuis, psychiatrist and neurologist.

"(4) Dr. R. M. Iverson, radiologist of the firm of Hansen, Iverson and Nord.

"As against these medical witnesses in Minneapolis, there are an orthopedist, Dr. E. R. Elzinga, of Marquette, Michigan, several general practitioners, a chiropractor and three radiologists in the upper peninsula of Michigan who have either examined, or treated plaintiff. Defendant concedes that plaintiff was brought to Minneapolis 'for evaluation' and it hardly seems reasonable that defendant would find it necessary to produce, first, all of the Minneapolis doctors, and second, all of the Michigan doctors—a total of some ten or twelve medical witnesses. This would be most unusual.

"Plaintiff has offered to stipulate to the admission in evidence, without foundation, of all hospital records, x-rays, and business records, and it is not likely that the 'demeanor and sincerity' of a radiologist are of sufficient importance to require his personal appearance, especially in view of the location in Minneapolis of medical witnesses who would be equally competent to interpret x-rays.

"The Court finds that the showing here made by the defendant, which was sued in the jurisdiction where it has its principal place of business and where its principal doctors in this case are located, has not made the clear showing required to deprive plaintiff of the venue privilege expressly granted to him by Section 6 of the Federal Employers' Liability Act. I do not find that the plaintiff is unfairly seeking to impose his case upon this jurisdiction or to oppress the defendant."

564

On the basis of the trial court's memorandum and the authorities cited therein, it seems that we have for determination here only the question whether there was an abuse of the broad discretion which rests with a trial court in determining matters of this kind. In view of the facts recited we are of the opinion that there was no abuse of such discretion and accordingly that the order of December 3, 1965, should be affirmed and the writ discharged.