JL SCHWIETERS CONSTRUCTION, INC., Respondent,

v.

GOLDRIDGE CONSTRUCTION, INC., et al., Appellants,

Minnwest Bank, M.V., Respondent,

Inver Grove Heights WP, LLC, a Delaware limited liability company, Respondent,

Auer Steel & Heating Supply Co., Respondent,

Crew2, Inc., Respondent,

J.F. Ahern Co., a Wisconsin corporation, Respondent,

Ramsey Excavating, Inc., Respondent,

MCI Paint & Drywall, Inc., Respondent,

Pine Bend Paving, Inc., Respondent,

Benedict Refrigeration Service, Inc., intervenor, Respondent,

Ferguson Enterprises, Inc., intervenor/defendant, Respondent,

Plummer Concrete, Inc., intervenor/defendant, Respondent,

Floor Technologies, Inc., intervenor/defendant, Respondent,

South Side Electric, Inc., intervenor/defendant, Respondent,

+ Tub Medic, Inc., Intervenor/Defendant,

Schindler Elevator Corporation, intervenor/defendant, Respondent,

Acquisition of I–94 Glass & Mirror, Inc., Respondent,

Ace Supply Co., Inc., as Assignee of Swanson Plumbing & Heating, Inc., Respondent,

BRODE–90, LLC, Respondent,

Wakota Federal Credit Union, Respondent,

21st Century Bank, Respondent,

John J. Morgan Company, Respondent,

Midwest Fence & Manufacturing Company, Respondent,

Egan Company, Respondent,

AVR, Inc., Respondent,

ELM of Wisconsin, Inc., Respondent,

Schwieters Companies, Inc., Respondent,

JDS & WMK, Inc., d/b/a Overhead Door Co. of the Northland, et al., Defendants.

No. A10–263.

Court of Appeals of Minnesota.

Sept. 21, 2010.

Ernest F. Peake, Patrick J. Lindmark, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd, Minneapolis, MN, for respondents JL Schwieters Construction, Inc. and Schwieters Companies, Inc.

Richard M. Carlson, Morris Law Group, P.A., Edina, MN, Albert Solochek, Howard, Solochek & Weber, S.C., Milwaukee, Wisconsin, pro hac vice for appellants Goldridge Construction, Inc., et al.

Frederick A. Dudderar, Jr., Hanft, Fride, et al., Duluth, MN, Brian M. Sund, Eric G. Nasstrom, Morrison Fenske & Sund, P.A., Minnetonka, MN, for respondent Minnwest Bank, M.V.

Matthew A. Anderson, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for respondent Inver Grove Heights WP, LLC.

Amy M. Kaldor, Murnane Brandt, St. Paul, MN, for respondent Crew2, Inc.

Patrick V. Johnson, Speeter and Johnson, Minneapolis, MN, for respondent Ramsey Excavating, Inc.

Michael J. Auger, Schleck & Associates, P.A., Minneapolis, MN, Justin L. Seurer, Seurer Law Firm, Minnetonka, MN, for respondent MCI Paint & Drywall, Inc.

Christopher J. Lehmann, Grannis & Grannis, P.A., South St. Paul, MN, for respondent Pine Bend Paving, Inc.

Marnie E. Fearon, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, for respondent Benedict Refrigeration Services, Inc.

Anthony U. Wacker, St. Paul, MN, for respondent Ferguson Enterprises, Inc.

Jennifer L. Lappegaard, Red Wing, MN, for respondent Plummer Concrete, Inc.

Malcolm D. MacGregor, Nolan, MacGregor, Thompson, et al., St. Paul, MN, for respondent Floor Technologies, Inc.

Dean G. Gavin, Gavin Law Office, PLC, Chaska, MN, for respondent South Side Electric, Inc.

James K. Sander, James K. Sander, P.A., Golden Valley, MN, for respondent Schindler Elevator Corporation.

Eric W. Forsberg, Forsberg Law Office, P.A., Minneapolis, MN, for respondent Acquisition of I–94 Glass & Mirror, Inc.

John M. Harvey, Harvey & Sheehan, Ltd., Minneapolis, MN, for respondents Ace Supply Co. as Assignee of Swanson Plumbing and Heating, Inc.

BRODE–90, LLC, Minneapolis, MN, respondent.

Wakota Federal Credit Union, South St. Paul, MN, respondent.

Thomas P. Dolphin, Blaine, MN, for respondent 21st Century Bank.

John J. Morgan Company, St. Paul, MN, respondent.

David E. Albright, Eagan, MN, for respondent Midwest Fence & Manufacturing Company.

Gregory T. Spalj, Fabyanske, Westra, Hart & Thomson, Minneapolis, MN, for respondent Egan Company.

Reese E. Chezick, Hastings, MN, for respondent AVR, Inc.

Charles B. Harris, Arthur Chapman Kettering Smetak & Pikala, P.A., Hudson, WI, for respondent ELM of Wisconsin, Inc.

Considered and decided by MINGE, Presiding Judge; HALBROOKS, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Wisconsin company Goldridge Group LLP appeals from the district court's denial of its motion to dismiss for lack of personal jurisdiction. Goldridge Group was sued for accepting fraudulent transfers of funds from a Minnesota subsidiary that owned the property developed during a construction project in Inver Grove Heights. When the project was completed, the subsidiary was insolvent and could not pay the subcontractors. Goldridge Group argues that the district court's assertion of personal jurisdiction violates its due process rights because Goldridge

Group does not itself have the requisite minimum contacts with Minnesota and because its subsidiary's Minnesota contacts should not be imputed to it. But because pretrial evidence implies that Goldridge Group treated its subsidiary as an alter ego or instrumentality to transact its business in Minnesota, we affirm.

## FACTS

This case concerns a dispute over a developer's failure to pay on contracts arising from the construction of the White Pines Senior Living Center in Inver Grove Heights. Preliminary pretrial evidence supports the following facts. The center and the land on which it sits are owned by Goldridge Group WP IGH LLC ("White Pines LLC"), a Wisconsin limited liability company. White Pines LLC is owned by Goldridge Group, a Wisconsin real estate holding company. Goldridge Group develops properties, including senior living centers in Minnesota and Wisconsin. Each senior center is organized as an LLC wholly owned by Goldridge Group. During the period relevant to this action, White Pines LLC had no employees, officers, corporate records, or bank account. It shares a business address with Goldridge Group. Its only asset is the senior center, its only income is rent from the center, and its only expenses are mortgage payments on the property.

All arrangements for the construction of the senior center appear to have been made by Goldridge Group. Goldridge Group's president obtained a $9.6 million mortgage from Minnwest Bank to secure a loan to finance construction of the senior center. Goldridge Group signed as guarantor of the loan. A Goldridge Group partner negotiated the lease of the completed senior center, and the group's accounting department kept track of rent receipts and mortgage payments. Be-

cause White Pines LLC had no bank account, all funds received by White Pines LLC flowed directly to Goldridge Group; on at least seven occasions, Goldridge Group received wire transfers directly from Minnwest Bank. White Pines LLC conveyed hundreds of thousands of dollars to Goldridge Group during the course of the project without receiving anything of value in exchange.

The sole bidder on the White Pines project was Goldridge Construction, Inc., a Wisconsin general contractor. Goldridge Construction was a Goldridge Group spinoff created to separate the group's real estate holding function from its construction function. Like White Pines LLC, Goldridge Construction shares an address with Goldridge Group. Its two shareholders are also the two sole partners of Goldridge Group.

Goldridge Construction hired several subcontractors, including respondent JL Schwieters Construction, Inc. Work on the project began in fall 2007, and Schwieters completed its part of the job in September 2008. By that time, White Pines LLC was insolvent and, within a year, Goldridge Construction would close its doors. Schwieters and the other subcontractors were advised that they would not be fully paid for their work.

Schwieters commenced a mechanic's lien foreclosure action, naming Goldridge Construction and White Pines LLC as defendants. Schwieters later added Goldridge Group as a defendant and sought to recover funds that it claimed White Pines LLC had fraudulently transferred to Goldridge Group while purportedly insolvent.

Schwieters deposed Gerard Koehn, a co-partner in Goldridge Group and a co-shareholder in Goldridge Construction. Despite having a substantial ownership interest in White Pines LLC as a Goldridge Group partner, Koehn seemed to lack

knowledge of White Pines LLC's structure and operations. He did not know whether White Pines LLC had any officers, whether it had its own checking account, whether it kept its own financial records, or even its business address. He was able to describe how he and Goldridge Group employees negotiated the mortgage and lease for White Pines LLC and provided it with accounting services, but he did not know whether White Pines LLC paid Goldridge Group for these services.

Goldridge Group moved to dismiss, arguing that it did not have sufficient contacts with Minnesota to support the district court's exercise of personal jurisdiction. The district court denied the motion, apparently reasoning that Goldridge Group had sufficient contacts because it had transacted substantial business in Minnesota through its subsidiary White Pines LLC.

Goldridge Group appeals.

## ISSUE

Does the district court have personal jurisdiction over Goldridge Group?

## ANALYSIS

■ Goldridge Group challenges the district court's order denying its motion to dismiss for lack of personal jurisdiction. An order denying a motion to dismiss for lack of personal jurisdiction is immediately appealable. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 518 N.W.2d 58, 60 (Minn.App. 1994), *aff'd*, 533 N.W.2d 25 (Minn.1995). Whether personal jurisdiction exists is a question of law reviewed de novo. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 569 (Minn.2004). The burden of proof rests with the plaintiff. *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 n. 1 (Minn.1983). But a plaintiff need only make a prima facie showing of personal jurisdiction before tri-

al, and the complaint and any supporting evidence must be taken as true. *Hardrives, Inc. v. City of La Crosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). Minnesota courts' power over out-of-state defendants extends to the full extent of constitutional due process, and any doubts should be resolved in favor of retaining jurisdiction. *Id.* at 296, 240 N.W.2d at 818.

■ Minnesota has a "long-arm" statute that defines personal jurisdiction over foreign defendants. *See* Minn.Stat. § 543.19 (2008). Minnesota's long-arm statute and the federal Due Process Clause are coextensive, meaning that if the federal constitution's due process requirements are met, the long-arm statute's requirements are also satisfied. *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 673 (Minn.App.2000). Minnesota courts therefore may simply apply federal law to ascertain whether personal jurisdiction exists. *Id.*

■■ For personal jurisdiction over a defendant to exist, the defendant's contact with the forum state must be sufficient to ensure that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id.* at 674 (quotation omitted). According to this "minimum contacts" analysis, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within" the state. *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). Due process also requires that a defendant be able to "reasonably anticipate" the exercise of personal jurisdiction. *Id.*

■ Personal jurisdiction may be established by general or specific conduct. General personal jurisdiction exists when a party's contacts with the forum state are "continuous and systematic." *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d

25, 30 (Minn.1995) (quotation omitted). By contrast, "[s]pecific jurisdiction can arise from a single contact with the forum if the cause of action arose out of that contact." *Marshall*, 610 N.W.2d at 674. Minnesota courts consider five factors to determine the existence of personal jurisdiction: "(1) The quantity of the contacts with the forum state, (2) The nature and quality of the contacts, (3) The source and connection of the cause of action with these contacts, (4) The interest of the state in providing a forum, (5) The convenience of the parties." *Id.*

The district court determined that White Pines LLC "ha[s] undoubtedly engaged in substantial business transactions within the state of Minnesota," such that it is subject to personal jurisdiction here. Goldridge Group does not challenge that determination. And we agree that, by virtue of buying land in Minnesota, borrowing money from a Minnesota bank to finance a construction project on that land, and renting out the developed property, White Pines LLC has created minimum contacts to support a Minnesota court's exercise of personal jurisdiction over it.

But the issue before the district court, and now on appeal, is whether Schwieters's allegations and supporting evidence make out a prima facie case that Goldridge Group itself is subject to personal jurisdiction in Minnesota. The district court did not conclude that Goldridge Group itself had sufficient minimum contacts with Minnesota to support the exercise of personal jurisdiction; it instead appeared to hold that Goldridge Group was vicariously subject to personal jurisdiction through the activities of its subsidiary, White Pines LLC, which did have minimum contacts. We observe that on the facts alleged, Goldridge Group arguably had sufficient contacts to support specific personal jurisdiction without the need to consider its subsidiary's contacts. But the parties have thoroughly argued the issue of vicarious personal jurisdiction and we analyze the case accordingly.

A nonresident corporation may be subject to jurisdiction in a state by virtue of its subsidiary's activities in that state if the companies are organized and operated so that the subsidiary is an instrumentality or alter ego of the parent. *Zimmerman v. Am. Inter–Ins. Exch.*, 386 N.W.2d 825, 828 (Minn.App.1986) (citing *Scott v. Mego Int'l, Inc.*, 519 F.Supp. 1118, 1126 (D.Minn.1981)), *review denied* (Minn. July 31, 1986). The issue here is therefore whether White Pines LLC was organized and operated as an instrumentality or alter ego of Goldridge Group. We hold that it was.

Although this court in *Zimmerman* opined that a foreign parent corporation may subject itself to jurisdiction in Minnesota through the in-state activities of its subsidiary, neither that case nor any other published Minnesota decision has held that jurisdiction over a foreign parent exists on this basis. *See Zimmerman*, 386 N.W.2d at 828 (rejecting personal jurisdiction over subsidiary corporation based on parent corporation's owning sister subsidiaries licensed in Minnesota because subsidiary corporation had no direct contact with its sisters or with its parent).

We find persuasive the two federal cases *Zimmerman* cites for the principle that personal jurisdiction over a nonresident corporation can be obtained through its subsidiary. In *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.*, the Eighth Circuit affirmed the Iowa federal district court's exercise of personal jurisdiction over the sole shareholder of a Wisconsin corporation. 519 F.2d 634, 636–38 & n. 3 (8th Cir.1975). The Lakota Girl Scout Council had contracted with the Wisconsin corporation to conduct fundrais-

ing. *Id.* at 636. When the corporation failed to perform under the contract, the council sued and sought to pierce the corporate veil and join the corporation's sole shareholder as a defendant. *Id.* After a jury found him liable, the shareholder appealed, arguing that the district court lacked personal jurisdiction and that there was insufficient evidence to support veil-piercing. *Id.* at 636–37. Considering the issues of veil-piercing and personal jurisdiction together, the court held that the following evidence established that the corporation was the shareholder's alter ego:

> (1) [The shareholder] is and has always been the sole shareholder ...; (2) [he] was the firm's sole incorporator ...; (3) [he], and no one else, gave loans to and borrowed money from the corporation; (4) [he] and his wife owned the building where the company was headquartered and received rental payments from the company; (5) the company purchased a Lincoln automobile for [the shareholder's] business use which [he] also used for incidental personal business.

*Id.* at 638. The court concluded, "In short, the evidence was overwhelming that [the shareholder] dominated and controlled the business and treated it as his own." *Id.*

In *Scott,* the Minnesota federal district court held that it had personal jurisdiction over a Delaware corporation whose subsidiary allegedly infringed a Minnesota business's trademark. 519 F.Supp. at 1121–22, 1124–26. The parent corporation had no direct involvement in Minnesota, but the court exercised personal jurisdiction over the parent because of its relationship with the subsidiary. *Id.* at 1125–26. The court observed that (1) the parent conducted business through "wholly owned," "closely interrelated" subsidiaries; (2) the parent and subsidiary maintained offices in the same location; (3) both directors of the subsidiary were also directors of the par-

ent; (4) the corporations shared a number of officers; (5) the corporations issued consolidated financial statements and tax returns; (6) the parent guaranteed the credit facility of the subsidiary and funded its pension plan; (7) the parent held itself out as having substantial control of the subsidiary and did in fact have substantial control; and (8) the parent-subsidiary relationship appeared to be a convenient way for the parent to organize its own business. *Id.* at 1126.

Schwieters presents at least as strong a case for vicarious personal jurisdiction as *Scott* and *Lakota Girl Scout Council.* Similar to *Lakota Girl Scout Council,* in which there was a single shareholder who dominated his corporation, here, Goldridge Group was the sole owner of White Pines LLC and completely controlled the LLC for its own purposes. And many of the factors that supported personal jurisdiction in *Scott* are also present in this case: Goldridge Group conducted its real estate holding business related to this project through White Pines LLC, sharing a single business address. The parent in *Scott* guaranteed the credit of its subsidiary, and here Goldridge Group guaranteed the debt that secured White Pines's mortgage. Goldridge Group also appears to have exerted substantial control over White Pines, using the LLC as a conduit for its own business. We hold that under the facts as alleged at this stage of the litigation, White Pines LLC operated as Goldridge Group's Minnesota alter ego, supporting the district court's exercise of vicarious personal jurisdiction over Goldridge Group.

Goldridge Group points out that several factors that supported vicarious jurisdiction in *Scott* are not present here: instead of sharing directors with its parent as in *Scott,* White Pines LLC had no directors; instead of sharing officers with Goldridge Group, White Pines LLC had no officers;

and instead of issuing consolidated financial statements, White Pines LLC issued no statements. Not every factor present in *Zimmerman* or *Scott* is necessary for personal jurisdiction to exist. The absence of these "*Scott* factors" does not weaken Schwieters's case for personal jurisdiction. White Pines LLC's complete lack of any officers, directors, or financial statements more strongly suggests that White Pines LLC is merely Goldridge Group's alter ego than would shared officers, directors, and financial statements. And there are still other factors present in this case that *Scott* lacked. Here, for example, the same two principals are in control of both entities. And here, the parent guaranteed a multi-million-dollar loan for a company with no assets other than a single piece of real property.

Goldridge Group argues that the district court incorrectly relied on its mortgage guaranty and the seven wire transfers to help establish minimum contacts. It conceded at oral argument that it did receive funds from Minnwest Bank but argued that it did not benefit directly from these funds because the funds were transferred into a "concentration account" shared by all the related Goldridge entities. Goldridge Group's concentration-account argument is novel. It does not appear in Goldridge Group's brief, and Goldridge Group acknowledged that nothing in the record supports the theory. Even if there were support for the argument, Goldridge Group fails to convince us that the wire transfers are irrelevant to whether Goldridge Group was operating White Pines LLC as a mere instrument. The district court properly considered both the mortgage guaranty and the wire transfers as factors relevant to vicarious personal jurisdiction.

## DECISION

Schwieters's allegations and the record evidence support an inference that Goldridge Group created and operated White Pines LLC as a convenient means of conducting its Minnesota real estate holding business. And this inference in turn supports the district court's preliminary assertion of vicarious personal jurisdiction over Goldridge Group.

**Affirmed.**